No. 38,041

THE STATE OF KANSAS, *Appellee*, v. EVA WILSON, *Appellant*.

(220 P. 2d 121)

Opinion filed July 8, 1950.

*Karl V. Shawver,* of Paola, argued the cause, and *Karl V. Shawver, Jr.,* of Paola, was with him on the briefs for the appellant.

*John Anderson, Jr.,* county attorney, argued the cause, and was on the briefs for the appellee.

The opinion of the court was delivered by

PRICE, J.: Defendant was charged and tried on seven counts of alleged liquor and gambling violations. She was found guilty on counts two and three and acquitted on the remainder. Her motions in arrest of judgment and for a new trial being overruled, she has appealed.

Count two charged:

". . . that on the 16th day of July, 1949, in said County of Johnson, and State of Kansas, one Eva Wilson did then and there unlawfully have in her possession in excess of two quarts of alcoholic liquor upon which the tax imposed by the Kansas Liquor Control Act has not been paid, and the contents [containers] of which did not have Kansas tax stamps affixed thereto, . . ."

Count three charged:

". . . that on the 16th day of July, 1949, in said County of Johnson, and State of Kansas, one Eva 'Wilson did then and there unlawfully have alcoholic liquor in her possession on the following described premises, to-wit:

"The Southeast Corner of the South one-half (½) of the Northeast Quarter (NE ¼) of Section Twenty-eight (28), Township twelve (12), Range Twenty-three (23), in said County and State, and lying between Highways No. 10 and No. 7.

said premises being licensed in the name of said defendant, Eva Wilson, for the retail sale of cereal malt beverages, . . ."

The defendant was the owner and operator of what is known as "Eva's Tavern" northwest of Olathe at the junction of State Highways 10 and 7. The property consisted of a filling station, cabins and a main building in which were located a bar for dispensing cereal malt beverages and soft drinks, a dance floor and tables or booths where customers were served. The kitchen was in the rear of the main building and the defendant maintained her sleeping quarters immediately above, all in the same building. Access to the sleeping quarters was had by a stairway leading up from the kitchen. The state's evidence tended to establish that from time to time the defendant had kept intoxicating liquors in the upstairs part of the main building or in the stairway behind a locked door leading upstairs, and that she had been selling intoxicating liquor by the drink and had permitted customers to consume intoxicating liquor in the tavern. On July 16, 1949, her place was raided by county law enforcement officers under a search warrant. At first the defendant refused to unlock the door leading upstairs, but finally did so. In her sleeping quarters the officers found two cases containing liquor, one containing twenty-three pints of whiskey and the other seven bottles of gin. For present purposes we confine ourselves to the evidence pertaining to count two.

It will be noted that this count charged the defendant with possession of in excess of two quarts of alcoholic liquor upon which the Kansas tax had not been paid and the containers of which did not have Kansas tax stamps affixed thereto, in violation of section 50, chapter 242, Laws of 1949. It is conceded that the governor's proclamation provided for under section 112 of the act had been in full force and effect for more than thirty days prior to July 16, 1949, and that on that date it was unlawful for any person to have in his possession in excess of two quarts of alcoholic liquor upon which the Kansas tax had not been paid and the containers of which did

not have Kansas tax stamps affixed thereto. During the course of the trial, upon motion of defendant, the state was required to elect as to which of the two charges contained in count two it relied on for conviction, and pursuant thereto, in open court, amended count two so as to charge the defendant merely with the unlawful possession of more than two quarts of alcoholic liquor, the containers of which did not have the Kansas tax stamps affixed thereto as required by law. In other words, the question whether the Kansas tax had been paid was removed from count two by the amendment and all that remained was the question concerning whether the bottles had the Kansas tax stamps affixed.

There is no contention but that the twenty-three pint bottles in the case introduced as Exhibit "E" and the seven bottles in the case introduced as Exhibit "D" contained alcoholic liquor. The question is—did defendant have possession of more than two quarts upon the containers of which there were no Kansas tax stamps affixed. The record before us shows that only one pint bottle of whisky from Exhibit "E" and one bottle of gin (size not shown) from Exhibit "D," on neither of which was there attached a Kansas tax stamp, were specifically introduced in evidence before the jury. On oral argument before this court counsel for the state admitted that only one bottle from each case was specifically introduced and exhibited to the jury, although he stated and the record shows that both cases of liquor were by the court admitted in evidence. The record does not show whether these two exhibits were sent to the jury room.

The defendant argues that there is an utter failure of proof to convict her under this count. We agree with her contention. It very well may be that each of the other bottles of liquor contained in the two cases did not have Kansas tax stamps affixed thereto, but the evidence in the record before us is silent on the question. Nowhere is it shown that there were in excess of two quarts the containers of which did not have the stamps affixed, and we are not permitted to speculate or surmise as to the other bottles. The gravaman of the offense charged is not possession, *but possession of in excess of two quarts of alcoholic liquor without Kansas tax stamps affixed to the containers,* and in our opinion the state failed in its proof in this respect.

It therefore follows that as to count two the judgment of the lower court is reversed and the defendant is discharged.

We pass now to count three of the information which in substance

charged the defendant with possession of alcoholic liquor on premises which were licensed in her name for the retail sale of cereal malt beverages.

Section 1, chapter 245, Laws of 1949, which became effective April 8, 1949, provides, among other things, that it shall be unlawful for one holding a license for the retail of cereal malt beverages to possess alcoholic liquor upon or in the premises so licensed. In addition to the evidence heretofore mentioned, the raiding officers testified in substance that during the course of the raid the defendant claimed the liquor in question and stated that she was legally entitled to have as much whisky as she wanted on the premises for her own use. Later, when testifying herself, she attempted to establish that the liquor belonged to another party.

At the close of all the evidence the jury was duly instructed in writing and the case was argued by counsel for both parties. During its deliberations the jury sent a written question to the court as follows:

"Decision as to what property is licensed for sale of cereal malt beverage. Viz. — Does the license include the Resident part of building?"

In response to this question the court then instructed the jury in writing as follows:

"You are instructed that the Defendant was licensed to sell *cerial* malt beverages on the following described premises, in Johnson County, Kansas, to-wit: The Southeast Corner of the South one half of the Northeast Quarter of Section twenty eight, Township 12, Range 23, in said county and state, and lying between Highways #10 and #7.

"Your are further instructed that after April 8th, 1949, it was unlawful to sell, possess or to permit any persons to use or consume, upon or in said premises alcoholic liquors. And if you further find that on said premises the defendant maintained her place of residence, then the residence is included within the prohibition of the Statutes."

With respect to her conviction on count three it is contended (1) that the court failed to give proper instruction on possession; (2) that it was error to give the above quoted belated instruction, particularly with no opportunity for further argument, and (3) that ·the instruction itself is an erroneous and inaccurate statement of law.

We have carefully examined the instructions given by the court and we think that they fairly presented to the jury the issues involved. It is true that the court did not single out the word "possession" and define it in strict legal terms such as perhaps has been the customary practice down through the years when courts have

dealt with liquor violations. On the other hand, the conflicting testimony as to the possession of the liquor in question was heard by the jury and it would be unreasonable for us to assume that the jury did not understand the meaning of a word of common, everyday usage such as "possession" and as the word was repeated and used by the court in its other instructions.

Concerning defendant's second contention, it very frequently happens that during the course of a trial a jury will request additional instruction on some particularly bothersome point, and under such circumstances we cannot say as a matter of law that it is error for the court to give such further instruction, provided, of course, the instruction so given is not coercive or otherwise objectionable. Guided by that principle, we cannot say that under the circumstances here presented the giving of the additional instruction was in itself erroneous or in any way prejudicial, notwithstanding counsel's complaint that he did not have the opportunity for further argument to the jury. In other words, it has not been made to appear that the rights of the defendant were in any way prejudiced by the action of the trial court in giving the instruction.

. To us the real issue concerning the giving of this instruction is whether it was a correct statement of the law as applied to the facts brought out in the evidence. Defendant contends that in the nature of things her license to retail cereal malt beverages applied only to the bar or tavern part of her establishment, and that since the alcoholic liquor in question was found in her sleeping quarters above, the spirit and letter of the statute were not violated. She argues that if her conviction on this count is permitted to stand it would also be unlawful for her to possess alcoholic liquor in the filling station and cabins adjacent to the building which housed the tavern portion of her business, and that by the same line of reasoning one who owned a ten-story building could not lawfully possess alcoholic liquor in his living quarters on the tenth floor if he at the same time was licensed to retail cereal malt beverages in a business establishment on the first floor. The difficulty with that argument is that we are not here called upon to determine such question. We are concerned with the correctness of the instruction as applied to the facts of the case before us.

It is conceded that the defendant held a license to retail cereal malt beverages at and on the premises described in count three and in the instruction under consideration. We think the facts of this

case, some of which have already been summarized, indicate clearly that for all practical intents and purposes defendant's sleeping quarters and the tavern portion of her business were, within the intent and purview of the statute, indivisible. She owned and operated the business, and the kitchen from which the stairway led upstairs was used by her personally and for the preparation of food to be sold. It is not disputed that the some thirty bottles found in her possession contained alcoholic liquor. We think that it was clearly the intent of the legislature to prohibit the possession of alcoholic liquor by one holding a license to retail cereal malt beverages under the circumstances here disclosed. To hold otherwise would be to render ineffective the manifest purpose and intent of the legislature to divorce completely traffic in cereal malt beverages from that of alcoholic liquors.

Under the facts of this case we find no error in the instruction complained of. There was sufficient competent evidence to support the finding of guilt on count three of the information and as to such count the judgment of the lower court is affirmed.