No. 40,998

STATE OF KANSAS, *Appellee,* v. RAY PAYNE, *Appellant.*

(327 P. 2d 1071)

Opinion filed July 7, 1958.

*Carl Pingry*, of Pittsburg, argued the cause and was on the briefs for appellant.

*Robert E. Hoffman*, Assistant Attorney General, of Topeka, and *J. John Marshall*, County Attorney, of Pittsburg, argued the cause, and *John Anderson, Jr.*, Attorney General, of Topeka, and *Don H. Musser*, Assistant County Attorney, of Pittsburg, and *Lew A. Hasty*, Assistant Attorney General, of Topeka, were with them on the briefs for appellee.

The opinion of the court was delivered by

FATZER, J.: The defendant was charged with evading or attempting to evade the payment of tax or duty on alcoholic liquor by having in his possession a bottle of alcoholic liquor upon which the tax imposed by the state of Kansas had not been paid and upon which there was no stamp or mark required by law, in violation of G. S. 1957 Supp. 41-407. He entered a plea of not guilty, waived trial by a jury, and consented to an immediate trial by the district court. Having been found guilty as charged, he has appealed from the judgment of conviction and from orders overruling his motions to quash the information, for his discharge following the filing of the stipulation of facts, and for a new trial.

The evidence was stipulated by the parties, and may be summarized as follows: On June 13, 1957, the defendant purchased a half gallon of White Port wine in Missouri and walked with it across the state line into the city of Mulberry, Kansas, where he

was arrested by agents of the Director of Alcoholic Beverage Control. The wine was an alcoholic liquor as defined by G. S. 1957 Supp. 41-102 (2), and was possessed by the defendant for his personal use in this state.

Both the federal and Missouri liquor tax had been paid on the wine, but no tax had been paid on it to the state of Kansas prior to or at the time of defendant's arrest, and no stamp or mark evidencing the payment of the gallonage tax to the state of Kansas was affixed to the bottle or container.

Under the Kansas Liquor Control Act and regulations adopted by the Director of Alcoholic Beverage Control, all tax stamps evidencing the payment of the gallonage tax on alcoholic liquor must be purchased by the manufacturer or licensed distributor from the Director and affixed to each original package before it may be removed from the owner's bonded warehouse for sale at retail in the state. Licensed retailers are required to purchase all alcoholic liquor from a licensed distributor who must maintain a bonded warehouse in the state. It was impossible for the defendant to pay the gallonage tax directly to the state of Kansas, or to purchase a tax stamp to affix to the bottle containing the alcoholic liquor. No method is provided by the act by which a consumer or possessor of alcoholic liquor for his personal use can pay the gallonage tax; the only way he can increase tax revenues from alcoholic liquor is by purchasing the beverage from a licensed retailer in the state, in which case the tax is undoubtedly reflected in the sale price.

The defendant specifies error in four particulars which he has briefed under two basic contentions: *First,* that the provisions of G. S. 1957, 41-407 are inapplicable to him under the agreed facts, and *second,* that if the statute is applicable to those facts, it is void and unconstitutional being in violation of the commerce clause (Art. 1, Sec. 8, Clause 3) and the due process and equal protection clauses of the 14th Amendment to the Constitution of the United States, and of Sections 1 and 15 of the Bill of Rights of the Constitution of Kansas.

As preliminary to discussing the defendant's contentions we note that when G. S. 1957 Supp. 41-407 was originally enacted in 1949 (G. S. 1949, 41-407) the section was commonly referred to as the "two quart" provision of the act, which made legal the possession and transportation of not to exceed two quarts of alcoholic liquor for the personal use of the possessor, his family and guests, upon which the tax imposed by the act had not been paid or on the

containers of which the Kansas mark and stamp required by the act had not been affixed. In other words, any person could purchase not to exceed two quarts of alcoholic liquor in Missouri, or in any other state, and legally possess the same for personal use in this state without the Kansas tax stamp being affixed to the containers. The section, however, made it unlawful, following the governor's proclamation placing the licensing and taxing provisions of the act into effect, to possess more than two quarts of alcoholic liquor without the Kansas tax stamps or marks being affixed to the containers. (*State v. Sumner,* 169 Kan. 516, 219 P. 2d 438; *State v. Wilson,* 169 Kan. 659, 220 P. 2d 121.) In the Wilson case the defendant was charged with possessing more than two quarts of alcoholic liquor without having the Kansas tax stamp affixed to each bottle or cask. In the opinion it was said:

". . . The gravaman of the offense charged is not possession, *but possession of in excess of two quarts of alcoholic liquor without Kansas tax stamps affixed to the containers* . . ." (l. c. 661.)

At its regular 1957 session the legislature amended G. S. 1949, 41-407 and removed the "two quart" provision (G. S. 1957 Supp. 41-407 [Ch. 291, L. 1957]). The title to the 1957 act reads:

"An Act relating to alcoholic liquor, *making it unlawful to possess alcoholic liquor in certain cases and providing penalties for violations thereof;* amending section 41-407 of the General Statutes of 1949, and repealing said original section." (Emphasis supplied.)

That part of the amended section (G. S. 1957 Supp. 41-407) the defendant was charged with violating, reads:

"It shall be unlawful for any person (1) to evade, or attempt to evade, the payment of tax or duty on any such alcoholic liquor, in any manner whatever and upon conviction thereof, in addition to the penalty prescribed for the violation of this act, such person shall forfeit and pay, as a part of costs in such action, double the amount of the tax so evaded or attempted to be evaded; (2) *to have in his possession* any cask or package of such liquor, without having thereon each mark and stamp required therefor by law; and such cask or package not having the mark or stamp as aforesaid, shall be forfeited to the state of Kansas . . ." (Emphasis supplied.)

With respect to his first contention, the defendant maintains the Sumner case, *supra,* is inapplicable to the instant case and directs attention that the point there involved was the quantity of alcoholic liquor which might be legally possessed before the licensing and taxing provisions of the act were placed into effect. He argues that the Wilson case, *supra,* is likewise inapplicable and points out that it was decided while the "two quart" provision was in effect, and

asserts that neither the applicability nor the constitutionality of the act was pertinent, for reasons stated in the opinion, nor urged as a ground for decision.

The defendant insists that G. S. 1957 Supp. 41-407 makes it unlawful to evade or attempt to evade payment of tax or duty on any *"such alcoholic liquor,"* or to possess any cask or package of *"such liquor"* without having thereon each mark or stamp required by law; that the terms *"such alcoholic liquor"* and *"such liquor"* as used in the statute apply only to alcoholic liquor subject to a Kansas tax imposed by other provisions of the act (G. S. 1957 Supp. 41-501, 41-502; G. S. 1949, 41-503, 79-4101, 79-4102); that the only tax assessed upon alcoholic liquor is the gallonage tax and the 2 percent enforcement tax which is collected by licensed retailers; that the gallonage tax is assessed upon the privilege of engaging in business as a manufacturer or as a licensed distributor, which shall be paid to the Director only once and shall be collected upon alcoholic liquor in the bonded warehouse of such licensees by the purchase of tax stamps from the Director to be affixed to each original package prior to withdrawal for sale to other distributors or to licensed retailers (G. S. 1949, 41-401, 41-402, 41-403, 41-504; G. S. 1957 Supp. 41-502); that since the alcoholic liquor he possessed had never passed through the state's system of controlling the traffic in alcoholic liquor and was never taxed in the hands of a manufacturer, licensed distributor or licensed retailer, it was never subject to a Kansas tax; consequently, he cannot be guilty of evading or attempting to evade the tax.

This court is not persuaded by the defendant's contention. We are first admonished by the rules of statutory construction set out in *State v. Sumner,* supra, which interpreted certain sections of the Kansas Liquor Control Act, that:

"In order to ascertain the legislative intent courts are not permitted to consider only a certain isolated part or parts, of an act but are required to consider and construe together all parts thereof *in pari materia.*

"It is the duty of courts to reconcile various provisions of an act in order to make them consistent, harmonious and sensible if that can be done without doing violence to plain provisions therein contained.

"When the interpretation of some one section of an act according to the exact and literal import of its words would contravene the manifest purpose of the legislature, the entire act should be construed according to its spirit and reason, disregarding so far as may be necessary the strict letter of the law." (Syl. §§ 1, 2 and 3.)

The term "alcoholic liquor" is defined in G. S. 1957 Supp. 41-102 (2) as follows:

"Alcoholic liquor" includes the four varieties of liquor as defined herein, namely, alcohol, spirits, wine and beer, and every liquid or solid, patented or not, containing alcohol, spirits, wine or beer, and capable of being consumed as a beverage by a human being, but shall not include any beer or cereal malt beverage containing not more than three and two-tenths percent (3.2%) of alcohol by weight."

Although the first sentence of G. S. 1949, 41-1103 indicates that the unrestricted possession and transportation of alcoholic liquor was legal after the effective date of the act, March 9, 1949, other provisions of the act contain limitations with respect thereto. G. S. 1949, 41-104 reads, in part:

"*No person shall* manufacture, bottle, blend, sell, barter, transport, deliver, furnish or *possess any alcoholic liquor* for beverage purposes, *except as specifically provided in this act: Provided, That nothing contained in this act shall prevent:* (1) *The possession* and transportation *of alcoholic liquor* for the personal use of the possessor, his family and guests *except that* . . . *the provisions of section 50* [41-407] *of this act shall be applicable to all persons* . . ."

Despite many notions to the contrary, constitutional prohibition was not wholly repealed or rejected by the people of Kansas as a result of their mandate at the general election on November 8, 1948. (*State v. Larkin,* 173 Kan. 112, 118, 243 P. 2d 686.) While the act may not be perfect in every respect, it is crystal clear that its basic premise was one of total prohibition of the manufacture, sale, barter, transportation, delivery or possession of alcoholic liquor as a beverage, unless otherwise specifically provided in the act. As is noted, it specifically makes legal the possession of alcoholic liquor for the personal use of the possessor, his family and guests, but at the same time conditions such possession and use with the provisions of G. S. 1957 Supp. 41-407, making it unlawful to evade or attempt to evade the payment of tax or duty on "such alcoholic liquor" and to have possession of any cask or package of "such liquor" without each Kansas mark or stamp being affixed thereon as required by law. When G. S. 1949, 41-104 and G. S. 1957 Supp. 41-407 are construed together, which we are enjoined to do (*State v. Sumner,* supra), we are of the opinion that the terms "such alcoholic liquor" and "such liquor" as used in the latter section refer not only to alcoholic liquor which passes through the regulatory channels from a manufacturer to a licensed distributor and licensed

retailer pursuant to the act, but refer also to *any alcoholic liquor possessed within the state for the personal use of the possessor, his family and guests,* regardless of where or from whom such liquor was acquired. (*State v. Sumner,* supra; *State v. Wilson,* supra.) Unless the act is so construed, the first part of G. S. 1957 Supp. 41-407, *i. e.,* "It shall be unlawful . . ." and the first part of G. S. 1949, 41-104, *i. e.,* "No person shall . . . possess . . . any alcoholic liquor . . . except as specifically provided in this act . . ." are rendered entirely meaningless. Moreover, this conclusion is supported by G. S. 1957 Supp. 41-502 which provides that the payment of the gallonage tax (G. S. 1957 Supp. 41-501) shall be evidenced by tax stamps or crowns *"to be affixed to each original package of alcoholic liquor for use in this state."*

In its comprehensive scheme of regulating, licensing and taxing alcoholic liquor from the time of its manufacture or importation into the state until its ultimate sale by a licensed retailer for use and consumption, the manifest purpose of the legislature was to channelize the liquor traffic; to minimize the commonly attendant evils; also, to facilitate the collection of revenue. To this end the manufacture, sale, transportation, and possession are permitted only under carefully prescribed conditions (G. S. 1949, 41-104), and subject to constant control by the state (G. S. 1949, 41-208). All phases of the traffic are declared illegal unless definitely authorized by the act (G. S. 1949, 41-104). It was clearly intended that, except for the possession and use of alcoholic liquor referred to in G. S. 1949, 41-104 (2), (3), (4), (5) and (6), and G. S. 1957 Supp. 41-501 (4), (5) and (9), it shall be unlawful for any person to possess alcoholic liquor for his personal use in Kansas without having the Kansas tax stamps affixed to containers thereof (G. S. 1949, 41-104; G. S. 1957 Supp. 41-407, 41-501, 41-502; *State v. Wilson,* supra). Since Kansas tax stamps are affixed only to alcoholic liquor purchased from licensed retailers, it is evident that possession of alcoholic liquor by any person for use in this state acquired from any other source constitutes a violation of G. S. 1957 Supp. 41-407. Furthermore, the effect of the act is to require that all alcoholic liquor for use in this state bear its proportionate share of the gallonage tax. Had the defendant purchased the wine from a licensed retailer, taxes at the rate of 20 cents would have been paid to the state. His purchase of it in Missouri and possession in Kansas for personal use constituted an evasion of the amount of that tax. The fact that the mechanics of collecting the tax are such that the defendant could

not directly pay that amount does not make *its evasion* any less a crime.

The only significant difference between the 1957 amendment and the act as originally enacted, when construed by *State v. Sumner,* supra, and *State v. Wilson,* supra, is that the legislature has now prohibited the possession of all untaxed and unstamped alcoholic liquor for personal use in this state.

In view of the foregoing the defendant's contention that G. S. 1957 Supp. 41-407 is inapplicable to him cannot be sustained.

The defendant contends that if G. S. 1957 Supp. 41-407 is applicable to the agreed facts it is a revenue or taxing measure designed solely to aid or increase the collection of the gallonage tax and has no relation to the control and regulation of the liquor traffic, and, that as such, it violates the commerce clause and the due process and equal protection clauses of the 14th Amendmnt to the Constitution of the United States. The point is not well taken.

Section 2 of the 21st Amendment to the Constitution of the United States provides:

"The transportation or importation into any State, Territory or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited."

It has been repeatedly held that under the 21st Amendment a state may absolutely prohibit the manufacture, transportation, importation, sale or possession of alcoholic liquors irrespective of when or where produced or obtained, or the use to which they are to be put, and may adopt measures reasonably appropriate to effectuate those inhibitions and exercise full police authority in respect to them, unfettered by the due process clause, the equal protection clause or the commerce clause. (*State Board v. Young's Market Co.,* 299 U. S. 59, 81 L. ed. 38, 57 S. Ct. 77; *Mahoney v. Triner Corp.,* 304 U. S. 401, 82 L. ed. 1424, 58 S. Ct. 952; *Brewing Co. v. Liquor Comm'n,* 305 U. S. 391, 83 L. ed. 243, 59 S. Ct. 254; *Finch & Co. v. McKittrick,* 305 U. S. 395, 83 L. ed. 246, 59 S. Ct. 256; *Ziffrin, Inc. v. Reeves,* 308 U. S. 132, 84 L. ed. 128, 60 S. Ct. 163; *Crane v. Campbell,* 245 U. S. 304, 62 L. Ed. 304, 38 S. Ct. 98; *United States v. Renken,* 55 F. Supp. 1.) This greater power to prohibit includes the lesser power to permit under definitely prescribed conditions. (*Seaboard Air Line Ry. v. North Carolina,* 245 U. S. 298, 62 L. ed. 299, 38 S. Ct. 96; *State Board v. Young's Market Co.,* supra; *Ziffrin, Inc. v. Reeves,* supra.) In *State Board v. Young's Market Co.* the supreme court declared:

"The words used [the 21st Amendment] are apt to confer upon the State the power to forbid all importations which do not comply with the conditions which it prescribes." (p. 62.)

"Surely the State may adopt a lesser degree of regulation than total prohibition." (p. 63.)

Assuming, *arguendo,* that G. S. 1957 Supp. 41-407 was designed only to effectuate the collection of taxes and had no relation to the protection of public health, safety or morals, the defendant's contention must fail. Under the 21st Amendment a state may discriminate in favor of alcoholic liquor processed within the state as against alcoholic liquor processed elsewhere and such discrimination is permissible although it is *not* incident to reasonable regulation of the liquor traffic nor to the protection of the health, safety or general welfare of its citizens. (*Finch & Co. v. McKittrick,* supra; *Mahoney v. Triner Corp.,* supra; *Brewing Co. v. Liquor Comm'n,* supra.)

We find nothing in *Murphy v. Love,* 249 F. 2d 783, cited by the defendant, which compels a ·different conclusion. In that case the alcoholic liquor was transported from Missouri to the Fort Leavenworth Military Reservation in Kansas, exclusive jurisdiction of which had been ceded by Kansas to the United States. The court correctly applied the rule applicable to interstate transportation of alcoholic liquor *through* the territorial boundaries of a state. (*Duckworth v. Arkansas,* 314 U. S. 390, 86 L. ed. 294, 62 S. Ct. 311; *Carter v. Virginia,* 321 U. S. 131, 88 L. ed. 605, 64 S. Ct. 464.) The instant case involves alcoholic liquor possessed for personal use within Kansas.

The defendant urges that it is a denial of due process and equal protection of the laws under Section 1 of the Bill of Rights of the Constitution of Kansas for criminal penalties to be imposed for the possession of alcoholic liquor on which the Kansas gallonage tax had not been paid, where no method is provided by which he could pay the tax directly to the state. The point is not well taken. It has long been recognized in this state that alcoholic liquor occupies a special position with respect to exercise of the police power. In *State v. Durein,* 70 Kan. 13, 80 Pac. 987, this court declared:

"The commodity in controversy is intoxicating liquor. It is not corn, or rye, or hops, or grapes, or any other product, the cultivation and use of which minister to the normal and necessary wants of mankind; nor is it any solvent, preservative, essence, tincture, chemical, drug or compound used in the arts

or sciences which does not possess the character and quality of intoxicating liquor. But the article is one whose use, even moderately, is taken into account by actuaries of insurance companies, and which bars employment in classes of service involving prudent and careful conduct; an article conceded to be fraught with such contagious peril to society that it occupies a different status before the courts and the legislatures from other kinds of property, and places traffic in it upon a different plane from other kinds of business. There is, therefore, no question in this case of the power of the legislature to say generally what beverages men shall drink, or what they shall eat or wear, or when they shall arise or retire. The discussion must deal solely with a distinct article of trade, which already has earned a certain measure of reproach among civilized peoples." (l. c. 19, 20.)

The right to possess alcoholic liquor is qualified and is subject to the police power of the state. Thus, in *Johnson v. Reno County Comm'rs*, 147 Kan. 211, 75 P. 2d 849, the court said:

"Having the police power to forbid the sale of [intoxicating liquor] entirely, it, of course, had the power to regulate its sale. (*State v. Nossaman*, 107 Kan. 715, 193 Pac. 347; *Little v. Smith*, 124 Kan. 237, 239, 257 Pac. 959.) Having the power to regulate the sale, it had the authority to determine how, in its judgment, the desired regulation could be most effectively accomplished." (l. c. 216, 217.)

As has been indicated, G. S. 1957 Supp. 41-407 is part of a comprehensive scheme for the control and regulation of the liquor traffic. The fact that it is also a revenue producing measure does not deprive it of its regulatory character (*Johnson v. Reno County Comm'rs*, supra, p. 216). The statute is a legitimate method of effectuating the substantive policies of controlling the distribution, taxation, and sale of alcoholic liquor within the state (*Mugler v. Kansas*, 123 U. S. 623, 31 L. ed. 205, 8 S. Ct. 273). Moreover, insofar as it effectuates collection of taxes, it is evident that the legislature exercised the police power of the state in determining its policy that the liquor traffic bear the financial burden of carrying out the regulatory provisions designed to protect the community from the evils arising out of it.

We have examined all the authorities cited by the defendant and others not included in the briefs. They are not decisive of the questions involved. No extended discussion need be made that the statute violates Section 15 of the Bill of Rights. We answer the contention with the statement that no showing has been made that it does.

We have carefully examined the record and find no reversible error. The judgment is affirmed.