CELLARMASTER WINES OF
MISSOURI, INC., Plaintiff,

v.

Thomas J. KENNEDY, Director, Alcoholic Beverage Control Div., Kansas Department of Revenue, Defendant.

Civ. A. No. 84–4113.

United States District Court,
D. Kansas.

Jan. 22, 1985.

Michael W. Merriam, of Colmery, McClure, Letourneau, Entz & Merriam, Topeka, Kan., for plaintiff.

Richard Hodson, Asst. Atty. Gen., Topeka, Kan., for defendant.

## MEMORANDUM AND ORDER

EARL E. O'CONNOR, Chief Judge.

This matter comes before the court on the motion of plaintiff Cellarmaster Wines of Missouri, Inc., (Cellarmaster) for a pre-liminary injunction. Cellarmaster and defendant Thomas J. Kennedy, Director of the Kansas Department of Revenue's Alcoholic Beverage Control Division, (the Director) have submitted a "Stipulation of Facts" to accompany the motion. For the reasons set out below, we will deny the injunction.

### I. *Facts.*

The following nine paragraphs constitute the Stipulation of Facts submitted by the parties. (We note that the ninth Stipulation of Fact is immaterial to our decision in this matter.)

1. That plaintiff, Cellarmaster, is a Missouri corporation licensed to do business at 6942–6942 ½ North Oak Traffic Way, Gladstone, Missouri, and is engaged in the business of intrastate and interstate commerce as a retailer of alcoholic liquor, principally wine, from its licensed premises, as above.

2. Defendant Kennedy, acting in his capacity as the Director of Alcoholic Beverage Control Division of the Kansas Department of Revenue (hereinafter "Director"), is charged with the duty of regulating the distribution and sale of intoxicating liquor within the State of Kansas and in accordance with the laws of the State of Kansas, including the Kansas Liquor Control Act, K.S.A. 41–101 et seq.

3. Cellarmaster is a licensed retailer of alcoholic liquor in the State of Missouri—Division of Liquor Control. Cellarmaster is a wholly owned subsidiary of Cellarmaster Wines, Inc., a Florida corporation, which is a wholly owned subsidiary of Aura Promotions Ltd., a Delaware corporation.

4. The State of Missouri has authorized the sale of distilled spirits, wine and beer through private enterprise pursuant to the Twenty-First Amendment to the United States Constitution. Cellarmaster is licensed by the State of Missouri to sell distilled spirits, wine and beer from its retail outlets in the State of Missouri.

5. Cellarmaster has and does sell wine to Kansas residents from its licensed premise in Gladstone, Missouri.

6. On or about August 3, 1983, Cellarmaster, through its counsel, Mr. Morton Siegel, was notified by Mr. Richard Hodson, Assistant Attorney General, on behalf of the Director, that the activities of Cellarmaster were considered to be illegal under the laws of the State of Kansas. Such notification was based upon the assertion that Cellarmaster was selling alcoholic liquor in Kansas without a license and in violation of K.S.A. 41–104, K.S.A. 41–301, K.S.A. 41–308 and K.S.A. 41–901; that Cellarmaster was selling untaxed liquor in violation of K.S.A. 41–501 and K.S.A. 41–901 and that Cellarmaster was transporting liquor into the State of Kansas in violation of K.S.A. 41–724.

7. By letter dated September 23, 1983, the Director requested from Cellarmaster restitution of gallonage and enforcement taxes, including penalty and interest, on estimated sales in Kansas for the previous twelve months. In exchange for this payment, the Director agreed not to pursue other legal remedies against Cellarmaster for any prior illegal acts in Kansas. Payment was made on or around September 29, 1983.

8. Cellarmaster has, and does, and stands prepared to, voluntarily collect and remit the gallonage tax collectible pursuant to K.S.A. 41–501.

9. Sometime in March, 1978, a gift consisting of 15 cases of wine was delivered to the City of Wichita, Kansas, from Orleans, France. Special legislation was passed to allow the city to pay the gallonage tax upon that wine, which action the legislature felt was necessary to allow the city to possess this wine.

## II. *Statutory Framework.*

Before summarizing the respective positions of the parties, it seems wise to lay out the statutory framework at issue here. The Kansas Liquor Control Act, K.S.A. 41–

101 *et seq.*, contains the following general prohibition:

No person shall manufacture, bottle, blend, sell, barter, transport, deliver, furnish or possess any alcoholic liquor for beverage purposes, except as specifically provided in this act.

K.S.A. 41–104. The only exception relevant to this case provides that

nothing contained in this act shall prevent:

(1) The possession and transportation of alcoholic liquor for the personal use of the possessor, his or her family and guests except that the provisions of K.S.A. 41–1103 relating to transportation and the provisions of K.S.A. 41–407 shall be applicable to all persons.

K.S.A. 41–104(1).

Of the two provisions referred to in this exception, K.S.A. 41–1103 was merely transitional and is no longer relevant. The other provision, K.S.A. 41–407, provides that

(a) It shall be unlawful for any person to:

(1) Evade, or attempt to evade, the payment of tax or duty on any alcoholic liquor, in any manner whatever....

(2) Have in his or her possession any cask or package of alcoholic liquor, without having thereon each mark and stamp required therefor by law.

K.S.A. 41–407(a)(1), (2).

Under K.S.A. 41–501, the State of Kansas imposes a tax "upon the manufacturing, using, selling, storing or purchasing [of] alcoholic liquors in this state...." K.S.A. 41–501(b)(1). Subparagraph (b)(2) of the same section provides, in full, that:

(2) The tax imposed by this section shall be paid only once and shall be paid by the person in this state or federal area who first manufactures, uses, sells, stores, purchases or receives the alcoholic liquors. The tax shall be collected and paid to the director as provided in this act. If the alcoholic liquor is manufactured and sold in this state or a federal area, the tax shall be paid by the manufacturer or farm winery producing it. If

the alcoholic liquor is imported into this state by a distributor for the purpose of sale at wholesale in this state or a federal area, the tax shall be paid by the distributor.

Finally, K.S.A. 41–502 provides that "[p]ayment of the tax provided for in K.S.A. 41–501 and amendments thereto shall be evidenced by tax stamps or crowns to be affixed to each original package of alcoholic liquor, *except wine and brandy,* for use in this state." (Emphasis added.)

## III. *Positions of the Parties.*

An explanation of the dispute now existing between these two parties requires resort to sources other than the Stipulation of Facts. In its complaint, for example, Cellarmaster alleges that K.S.A. 41–104(1) permits Kansas residents to purchase wine from Cellarmaster in Missouri and transport that wine into Kansas—so long as (1) the possession and transportation of that wine is for the personal use of the purchaser, his or her family, and guests, and (2) the purchaser complies with the provisions of K.S.A. 41–407. Since wine is exempt from the tax stamp requirement, *see* K.S.A. 41–502, the mandate of K.S.A. 41–407(a)(2) is automatically satisfied. That leaves only K.S.A. 41–407(a)(1), concerning the evasion of, or attempt to evade, payment of tax on the wine.

The Director contends that the latter requirement simply cannot be met by Kansas residents who choose to purchase wine from nonresident sellers. It is the Director's position that an individual Kansas resident may not pay the applicable taxes directly to the State of Kansas. Relying on K.S.A. 41–501(b)(2), the Director asserts that the only parties eligible to pay such tax are Kansas manufacturers and Kansas distributors of wine.

Cellarmaster seeks to circumvent the Director's interpretation of K.S.A. 41–501(b)(2) by voluntarily collecting the Kansas tax from Kansas wine purchasers at its Missouri store. Cellarmaster would then remit these tax monies directly to the State of Kansas. In its view, the Kansas purchaser would thus not be evading or attempting to evade payment of tax on wine later found to be in his or her possession within the State of Kansas. If Cellarmaster's view were adopted by the Director, Kansas residents who chose to purchase wine from Cellarmaster at its Missouri store could presumably transport that wine into the State of Kansas without fear of prosecution. Cellarmaster concludes that such a change in the Director's interpretation of these statutes would increase its sales of wine to Kansas residents.

Although the parties would presumably agree that the above paragraphs correctly set out their respective positions in this matter, they do not agree on the legal issue presented to the court. According to Cellarmaster's brief, the issue is as follows:

> May the Kansas Director of Alcoholic Beverage Control prevent a nonresident retailer of wine products [from] voluntarily collecting and remitting to the Director applicable Kansas gallonage taxes on wine sold to Kansas residents?

Plaintiff's Brief at 1. Cellarmaster would answer this question in the negative. It asserts that the Director's current interpretation of this Act is beyond his statutory authority, and thus deprives Cellarmaster of its liberty or property without due process of law. (Cellarmaster makes no claim, however, that the Act itself is unconstitutional.)

The Director focuses on quite a different issue. In his view, the Kansas statutes outlined in part II of this Memorandum have no direct effect on Cellarmaster. Subject only to regulation by the Missouri Division of Liquor Control, Cellarmaster is always free to collect from its Kansas customers an amount equal to the Kansas gallonage tax, and even to voluntarily remit that money to the State of Kansas. The dispute is over what *effect* such collection and voluntary remission of those funds should have on Kansas residents. While Cellarmaster would have its activities insulate those Kansas residents from prosecution under K.S.A. 41–407, the Director would ascribe no such effect to Cellarmas-

ter's activities. In the Director's view, Cellarmaster would merely be acting as a conduit for the payment of gallonage taxes directly from Kansas consumers to the State of Kansas. The Director would thus state the issue as follows:

> May a Kansas resident who purchases wine from a nonresident seller pay the applicable gallonage taxes directly to the State of Kansas?

Relying both on statutory construction and on existing case law, the Director would answer this question in the negative.

We believe that the Director's proposed question more appropriately frames the legal issue than does Cellarmaster's. For the reasons set out in part V of this Memorandum, we also agree with the Director's conclusion. Before we deal with the merits of the issue, however, part IV of this Memorandum will address the Director's contention that Cellarmaster is without standing to mount this challenge.

## IV. *Standing.*

As the Supreme Court has indicated, "Generalizations about standing to sue are largely worthless as such." *Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 151, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970) (Douglas, J.). With that caveat in mind, we attempt to summarize the Court's current standing doctrine.

Any standing inquiry must begin with article III of the Constitution. Article III's "case or controversy" requirement is designed so that parties seeking to invoke the court's jurisdiction have "such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." *Larson v. Valente,* 456 U.S. 228, 238–39, 102 S.Ct. 1673, 1680, 72 L.Ed.2d 33 (1982). The *Larson* Court continued:

> This requirement of a "personal stake" must consist of "a 'distinct and palpable injury ...' to the plaintiff," *Duke Power Co. [v. Carolina Environmental Study Group,* 438 U.S. 59,] 72 [98 S.Ct. 2620, 2630, 57 L.Ed.2d 595 (1978)], *quoting Warth v. Seldin,* 422 U.S. 490, 501 [95 S.Ct. 2197, 45 L.Ed.2d 343] (1975), and "a 'fairly traceable' causal connection between the claimed injury and the challenged conduct," *Duke Power Co., supra* [438 U.S.], at 72 [98 S.Ct. at 2630], *quoting Arlington Heights v. Metropolitan Housing Dev. Corp.,* 429 U.S. 252, 261 [97 S.Ct. 555, 561, 50 L.Ed.2d 450] (1977).

*Larson,* 456 U.S. at 239, 102 S.Ct. at 1680.

▪ Except where Congress has, by legislation, expanded standing to the full extent permitted by article III, federal courts must also consider various "prudential principles" which might require a denial of standing. *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99–100, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979). Three such prudential considerations have been noted by the Court with some frequency. First, a litigant normally must assert an injury that is peculiar to himself or to a distinct group of which he is a part, rather than one "shared in substantially equal measure by all or a large class of citizens." *Gladstone,* 441 U.S. at 100, 99 S.Ct. at 1608 (*quoting Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975)). Second, the interests of the plaintiff must be at least "arguably within the zone of interests to be protected or regulated" by the statutory framework within which his claim arises. *Simon v. Eastern Kentucky Welfare Rights Organization,* 426 U.S. 26, 39 n. 19, 96 S.Ct. 1917, 1925 n. 19, 48 L.Ed.2d 450 (1976) (*quoting Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. 150, 153, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970)). And third, a plaintiff must assert his own legal interests, rather than those of third parties. *Gladstone,* 441 U.S. at 100, 99 S.Ct. at 1608.

▪ Although, as just indicated, a plaintiff may not ordinarily assert the rights of third parties, the Court has recognized exceptions to this rule. For instance, a constitutional or statutory provision may grant an express or implied right to seek relief on

the basis of the legal rights and interests of others. *Warth v. Seldin,* 422 U.S. at 501, 95 S.Ct. at 2206 and cases cited therein. Alternatively, a plaintiff with standing to challenge the lawfulness of a statute "is entitled to assert those concomitant rights of third parties that would be 'diluted or adversely affected' should [its] constitutional challenge fail and the statute[ ] remain in force." *Craig v. Boren,* 429 U.S. 190, 195, 97 S.Ct. 451, 456, 50 L.Ed.2d 397 (1976) (*quoting Griswold v. Connecticut,* 381 U.S. 479, 481, 85 S.Ct. 1678, 1680, 14 L.Ed.2d 510 (1965)). This *Craig* exception was relied upon by the Tenth Circuit in *Hejira Corporation v. MacFarlane,* 660 F.2d 1356, 1360 (10th Cir.1981). In both *Craig* and *Hejira,* the courts took pains to point out that the plaintiff was allowed to assert the rights of third parties only *after* it had shown that it had standing to assert at least some claims on its own.

■ With these guidelines in mind, we turn to the standing question presented by this case. Under the facts as stipulated by the parties, Cellarmaster fails to meet even the article III standing requirements. If Cellarmaster has incurred any "distinct and palpable injury," it has presumably been the reluctance of Kansas residents to purchase wine from nonresident sellers. Yet the parties have not stipulated that *any* such Kansas resident has been discouraged from purchasing Cellarmaster's wine by the Director's interpretation of this Act. Even accepting Cellarmaster's allegation to that effect, however, we fail to see any causal connection between Cellarmaster's interpretation of the Act and increased sales of wine to Kansas residents. On the one hand, it seems plausible that a Kansas resident no longer facing the threat of prosecution for evasion of Kansas gallonage taxes would be more likely to purchase wine from Cellarmaster or other nonresident wine sellers. Counteracting this notion, however, is the fact that Cellarmaster's interpretation of the Act would force such Kansas residents to pay not only the Missouri gallonage tax, but also the Kansas tax. Kansas residents would thus incur a lower tax burden by buying their wine in Kansas rather than in Missouri. Cellarmaster has offered no evidence whatsoever to indicate that the reduced threat of prosecution outweighs the effect of double taxation. Accordingly, Cellarmaster has failed to establish even the article III standing requirements.

·Even assuming Cellarmaster had established the article III requirements, prudential considerations would require us to deny Cellarmaster standing to seek this injunction. Although Cellarmaster alleges that the Director's interpretation of these statutes violates the U.S. Constitution, the existence of such a violation depends on the proper interpretation of the Kansas Liquor Control Act. We must thus determine whether Cellarmaster's right to sell wine to Kansas residents at its Missouri stores is arguably within the zone of interests to be protected by the Kansas Liquor Control Act. *See Association of Data Processing Service Organizations, Inc. v. Camp,* 397 U.S. at 153, 90 S.Ct. at 829.

We cannot believe that the Kansas legislature had any intention of aiding *nonresident* wine sellers when it enacted this Act. Not even Cellarmaster makes such a contention. Rather, it contends that the Act was designed to raise State revenues, and that its proposal would further that goal. Kansas would receive gallonage taxes on wine sold not only *within* Kansas, but also *without.* Even assuming Cellarmaster's economic prediction is correct, however, we do not believe that its underlying argument is valid.

The Kansas Supreme Court has described the purposes of this Act as follows:

> In its comprehensive scheme of regulating, licensing and taxing alcoholic liquor from the time of its manufacture or importation into the state until its ultimate sale by a licensed retailer for use and consumption, the manifest purpose of the legislature was to channelize the liquor traffic; to minimize the commonly attendant evils; also, to facilitate the collection of revenue. To this end the manufacture, sale, transportation, and pos-

session are permitted only under carefully prescribed conditions, and subject to constant control by the state. All phases of the traffic are declared illegal unless definitely authorized by the act.

*State v. Payne,* 183 Kan. 396, 402, 327 P.2d 1071, 1077 (1958) (citations omitted). As its name implies, then, the Kansas Liquor Control Act is concerned first and foremost with the *control* of liquor in the State of Kansas.

The preliminary injunction sought by Cellarmaster would seriously impair this goal of control. As Cellarmaster's counsel conceded at oral argument, the Director could not permit Cellarmaster to voluntarily collect and remit the Kansas gallonage tax without also granting that privilege to wine sellers in distant states. Although the Director might be able to ensure that Cellarmaster actually does collect and remit the full amount of tax, he clearly lacks the resources to police wine sellers located at a great distance from the state. Since wine is exempt from the tax stamp requirement, *see* K.S.A. 41–502, the Director could not even police the actions of distant wine sellers by inspecting the wine containers once they arrived within the State of Kansas. Cellarmaster's desired relief would thus undermine the central purpose of this Act.

Although the *Payne* court also suggested that one of the Act's purposes was "to facilitate the collection of revenue," 183 Kan. at 402, 327 P.2d at 1077, the reference does not support Cellarmaster's argument. Later in the *Payne* opinion, the court noted:

> As has been indicated, [K.S.A.] 41–407 is part of a comprehensive scheme for the control and regulation of the liquor traffic. *The fact that it is also a revenue producing measure does not deprive it of its regulatory character.* The statute is a legitimate method of effectuating the substantive policies of controlling the distribution, taxation, and sale of alcoholic liquor within the state.

183 Kan. at 405, 327 P.2d at 1079–80 (citations omitted; emphasis added). In other words, the Act is designed to *discourage* liquor consumption by imposing a tax thereon. The raising of revenue is merely incidental to that goal. Cellarmaster's desire to increase the amount of wine sold to Kansas residents is thus not even arguably within the zone of interests to be protected by the Act. On the basis of this prudential consideration, we must deny Cellarmaster standing to seek this preliminary injunction.

The other relevant prudential consideration involves the ability of Cellarmaster to challenge the Director's interpretation on the ground that it injures third parties. At oral argument, Cellarmaster expressly disclaimed any intention of relying on such third-party standing. Cellarmaster's counsel did express his belief, however, that third-party standing *would* be available under the circumstances of this motion. We will therefore consider that question at this point.

Cellarmaster points to no statutory or constitutional provision which either expressly or impliedly authorizes such third-party standing. *See Warth v. Seldin,* 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975). Nor is this case analogous to *Craig v. Boren.* As noted above, the latter case authorizes a plaintiff to rely on the rights of third parties *only* if the plaintiff has himself established standing to assert his own rights. We have already held that Cellarmaster failed to make such a showing.

In any event, an important factor relied upon by the *Craig* Court in granting third-party standing is absent here. In *Craig,* the legal prohibition created by the challenged statute was addressed directly to vendors such as the plaintiff in that case. Had the *Craig* plaintiff failed to heed the statutory command, she was subject to "sanctions and perhaps loss of license." *Craig,* 429 U.S. at 194, 97 S.Ct. at 455. No such sanctions are possible here. The Director disclaims any ability to prevent Cellarmaster from selling wine to Kansas residents. Cellarmaster apparently adopts the same view when it states that "the Director has utterly no control whatsoever

over plaintiff's activities in the State of Missouri, and could not attempt to exert any jurisdiction over plaintiff in Missouri." Plaintiff's Brief at 16.

This latter factor was sufficient to convince the United States District Court for the Western District of Missouri that a similarly situated plaintiff had no standing to challenge this same Act. In *Berbiglia, Inc. v. Cheney*, 249 F.Supp. 258, 262 (W.D. Mo.1965), that court commented as follows:

First, we think that the plaintiff has no standing to raise the question of the constitutionality of the Kansas Act. As a Missouri corporation it has never been adversely, legally affected by the Act. It has never been arrested or prosecuted under the Act, nor has it ever been legally directed or controlled under its provisions.

For the same reason, we hold that Cellarmaster has no standing to seek the preliminary injunction described in its motion.

We emphasize that this conclusion is limited to the issues actually raised by the instant motion. Cellarmaster notes that "[o]ther aspects of Plaintiff's Complaint relating to the conducting of wine tasting parties within the state of Kansas are not being addressed in Plaintiff's Application for Preliminary Injunction." Plaintiff's Brief at 2. Conceivably, those wine tasting parties might have subjected Cellarmaster to actual prosecution under the Act. This would explain, for instance, the sequence of events set out in paragraphs 6 and 7 of the Stipulation of Facts. A determination of Cellarmaster's standing to prosecute the claims contained in the rest of its complaint will be made at the proper time.

V. *The Merits of Cellarmaster's Claim.*

■ Even if Cellarmaster did have standing to challenge the Director's interpretation of this Act, its challenge would fail. Not only is the Director's interpretation of the Act perfectly reasonable, it is fully supported by the applicable case law. K.S.A. 41–501(b)(2) clearly defines who may pay the Kansas gallonage tax. It is to be paid "only once" and "by the person *in*

*this state* or federal area who first manufactures, uses, sells, stores, purchases or receives the alcoholic liquors." Moreover, the tax "shall be collected and paid to the Director *as provided in this act.*" *Id.* (emphasis added). The section then goes on to list only two possible payers of this tax, Kansas manufacturers and Kansas distributors. Nonresident sellers such as Cellarmaster are not mentioned, nor are Kansas consumers.

These limited options are fully consistent with the purposes of the Act. As noted above, the Kansas Supreme Court has held that "all phases of the [liquor] traffic are declared illegal unless definitely authorized by the act." *Payne*, 183 Kan. at 402, 327 P.2d at 1077. More to the point, the *Payne* court held that "[n]o method is provided by the act by which a consumer or possessor of alcoholic liquor for his personal use can pay the gallonage tax." 183 Kan. at 398, 327 P.2d at 1075. *See also Berbiglia, supra,* 249 F.Supp. at 263 ("There is no provision in the Act for payment of tax by the consumers."). Cellarmaster is thus barred from paying the Kansas gallonage tax either in its own right (as a nonresident wine seller) or on behalf of its Kansas customers (as Kansas consumers).

Cellarmaster seeks to distinguish both *Payne* and *Berbiglia* on the ground that they were decided when wine was still subject to the tax stamp requirement. We do not accept such a distinction. Rather, we agree with the Director that the tax stamp serves a mere evidentiary function. Where required, the presence of this stamp confirms that the gallonage tax has been paid. The exemption of wine from this requirement has admittedly made it more difficult for the Director to determine whether the required gallonage tax has been paid, but it has not relieved the appropriate parties of their duty to pay this tax. Nor has it altered the *identity* of those appropriate parties. Cellarmaster may thus derive no support for its position from the enactment of this stamp tax exemption.

## VI. *Preliminary Injunction Standards.*

To obtain a preliminary injunction, of course, Cellarmaster need not establish an absolute right to permanent injunctive relief. In *Otero Savings & Loan Ass'n v. Federal Reserve Bank of Kansas City, Missouri,* 665 F.2d 275, 278 (10th Cir.1981), the Tenth Circuit set out the following requirements for obtaining a preliminary injunction:

> The moving party must establish: (1) substantial likelihood that the movant will eventually prevail on the merits; (2) a showing that the movant will suffer irreparable injury unless the injunction issues; (3) proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) a showing that the injunction, if issued, would not be adverse to the public interest.
>
> \*   \*   \*   \*   \*   \*

The Tenth Circuit has adopted the Second Circuit's liberal definition of the "probability of success" requirement. When the other three requirements for a preliminary injunction are satisfied, "it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation." *Continental Oil Co. v. Frontier Refining Co.,* 338 F.2d 780, 782 (10th Cir.1964) (*citing Hamilton Watch Co. v. Benrus Watch Co.,* 206 F.2d 738, 740 (2d Cir.1953)).

In connection with this motion, we need not examine the last three elements set out above. It is clear to the court that Cellarmaster has failed to meet even the more liberal definition of the "probability of success" requirement. The statutory and case law are so clear that we see no "questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation." Thus, even if Cellarmaster could establish the other three requirements for a preliminary injunction, we would be forced to deny its motion.

IT IS THEREFORE ORDERED that the motion of plaintiff Cellarmaster Wines of Missouri, Inc., for a preliminary injunction be and hereby is denied.