45　351
54　707,
54　718,

THE STATE OF KANSAS, *on the relation of L. B. Kellogg, Attorney General,* v. THE KANSAS MERCANTILE ASSOCIATION *et al.*

1. LOTTERY — *Scheme.* A scheme for the distribution of prizes by chance is a "lottery."

2. SCHEME — *Playing Policy — Lottery.* A scheme, generally known as "playing policy," whereby an association sells for five cents, or any other specific sum of money, certificates or tickets, which entitle the purchaser to a lead pencil of trifling value, and also permits such purchaser to select certain numbers, say 3–9–13, which, if all drawn by a blindfolded boy from a revolving wheel, in which several numbers are placed, entitle the person purchasing the certificate or ticket to a prize of money, much larger in amount than he has paid for his certificate or ticket, is a "lottery."

*Original Proceeding in Quo Warranto.*

THE opinion, filed on February 7, 1891, states the case.

*L. B. Kellogg,* attorney general, for The State.
*S. B. Bradford,* for defendants.

The opinion of the court was delivered by

HORTON, C. J.: This action is brought under subdivisions 3 and 4 of ¶4767 of the General Statutes of 1889. It has for its object the forfeiture of the charter of the Kansas Mercantile Association, and the prevention of the individual defendants from acting as a corporation or exercising corporate rights. The charter states that the purpose for which the corporation was formed is to sell various articles of merchandise with premium numbers attached, the premium numbers entitling purchasers holding the same to a selection of other articles. The testimony of P. W. Kline, the general manager of the association, shows that the object in obtaining the charter was to enable the association to carry on the identical business which the evidence discloses is carried on by the association. The testimony of witnesses shows that the association has on hand a number of lead pencils, probably of the value of a small fraction of a cent; that a five cent investment or a dollar investment, in the purchase of one of the "vendor's certificates," as the defendants are pleased to call their tickets, entitles the purchaser to one of these lead pencils; that the purchaser of a certificate or ticket selects certain numbers, say 3–9–13, and hands these numbers into the office of the association, and if all the same numbers come out in the next drawing, the purchaser gets a prize, ranging from forty-five cents to $2,500; if the numbers selected do not come out, the purchaser gets no prize; that twice a day seventy-eight numbers are placed into a wheel on the stage of Hanson's opera house, at Kansas City, in this state; that the wheel is revolved for half an hour; that a blindfolded boy draws out twelve numbers at a noon drawing and thirteen numbers at an evening drawing; that such persons as choose to be present at these drawings attend and make up the audience; that the numbers drawn are posted on a blackboard, and are sent to the various agencies in Atchison, Wichita, Leavenworth, St. Joseph, Mo., and two or three points in Texas, where the as-

sociation has agencies established for the purpose of assisting in carrying on its business. The business of the association is called and generally known as "playing policy."

Section 3, article 15, of the constitution of the state, ordains that "lotteries and the sale of lottery tickets are forever prohibited." Of course, there is no provision in the statute concerning private corporations authorizing the formation of any corporation or association in this state to carry on lotteries or to sell lottery tickets.

Paragraph 4767, General Statutes of 1889, reads:

"Such action [in the nature of *quo warranto*] may be brought in the supreme court or in the district court, in the following cases: . . .

"Third: When any association or number of persons shall act within the state as a corporation without being legally incorporated.

"Fourth: When any corporation does or admits acts which amount to a surrender or forfeiture of their rights and privileges as a corporation, or when any corporation abuses its power or exercises powers not conferred by law."

Upon the pleadings and evidence, the sole question is, whether the business carried on by the Kansas Mercantile Association is a lottery. The word "lottery" must be construed in the popular sense, with a view of remedying the mischief intended to be prevented, and to suppress all evasions for the continuance of the mischief.

A "gift sale" of books is a lottery. (*The State v. Clarke*, 33 N. H. 329.)

A "prize-candy" business is a lottery. (*Hull v. Ruggles*, 56 N. Y. 424; *Holoman v. The State*, 2 Tex. App. 610.)

"Prize concerts" are lotteries. (*Commonwealth v. Thacher*, 97 Mass. 583; *The State v. Overton*, 16 Nev. 136; *Negley v. Devlin*, 12 Abb. Pr. 210.)

"Prize tickets" to induce subscriptions to a newspaper, constitute a lottery. (*The State v. Munford*, 73 Mo. 647.)

"Raffles" at fairs are lotteries. (*Commonwealth v. Manderfield*, 8 Phila. 459.)

"Drawing works of arts" constitutes a lottery. (*Governors of Almshouse v. American Art Union*, 7 N. Y. 228.)

"A public exhibition during which, and as a part of the advertised proceedings, presents were distributed among such of the audience as held tickets which answered to the numbers called at will by the exhibitor, held to be a lottery." (*The State v. Shorts*, 32 N. J. L. 398.)

"When a city or a government, in order to make an inducement for people to buy their bonds, holds out large prizes to be drawn by chance, or determined by lot in the manner in which prizes are usually determined in honestly-conducted lotteries, the mailing of circulars concerning such drawings, past and future, is a mailing of lottery circulars." (*United States v. Zeisler*, 30 Fed. Rep. 499.)

"A scheme for the disposal of town lots, by the terms of which a number of lots are sold, and others are reserved to be distributed by lot among the purchasers of the first portion, so that the chance of obtaining one of the reserved prize lots forms a part of the inducement or consideration for which each purchaser pays the price agreed on for the lot sold to him, is a lottery." (*United States v. Olney*, 1 Abb. U. S. 275.)

"Playing policy" has also been decided in New York to be a "lottery." (*Wilkinson v. Gill*, 74 N. Y. 63. In that case, Church, C. J., said that—

"A 'lottery' is defined by Webster, 'a scheme for the distribution of prizes by chance, or the distribution itself,' and he defines 'lot' as 'that which causes, falls, or happens; that which in human speech is called chance, fortune, hazard;' and 'to draw lots' is 'to determine an event by drawing one thing from a number, whose marks are concealed from the drawer and thus determining an event.' Worcester defines 'lottery' as 'a hazard in which sums are ventured for a chance of obtaining a greater value.' The language of Folger, J., in 56 N. Y. 424, may be adopted as a result of the accepted definitions: 'Where a pecuniary consideration is paid, and it is determined by lot or chance, according to some scheme held out to the public, what and how much he who pays the money is to have for it, that is a lottery.' "

Clearly, the business is which the association is engaged is "a scheme for the distribution of prizes by chance." It has all the essential features of a lottery, and should be so construed. A purchaser of a certificate or ticket from the association does so with the hope or expectation of drawing a prize. His purpose is to try his luck at "fortune's wheel," and not to get a lead pencil.

Within the definition of Webster and the authorities cited, the purpose of the association and its officers and agents is to establish and carry on a lottery. The purpose expressed in the charter of the association shows that purchasers of merchandise from the association, with premium numbers, were to be entitled to the selection of other articles; that is, prizes. Therefore it is evident that the parties filing the charter and organizing the association intended to carry on "a scheme for the distribution of prizes by chance;" that is, to establish "a lottery." This is unlawful. Such a scheme or business has no warrant of authority from any statute, and is in direct violation of the constitution of the state.

Even if there is no statute prescribing fines or penalties to be inflicted upon persons engaged in carrying on lotteries in the state, yet the constitution is so far self-executing that no charter can be granted, or corporation organized in the state for lottery business, or the sale of lottery tickets. The alleged charter of the defendant will therefore be declared null and void, and all of the defendants are hereby prohibited from transacting or carrying on the business, or "lottery" described in the petition.

Judgment will be entered accordingly against the defendants, with costs.

All the Justices concurring.