*In the matter of the Petition of* JOSEPH PERRY SMITH *for a Writ of Habeas Corpus.*

LOTTERY, *Carrying on, an Unlawful Calling.* The operating or carrying on of a lottery is included under the words "engaged in any unlawful calling whatever," as used in § 368 of the crimes act. (Gen. Stat. of 1889, ¶ 2509.)

*Original Proceeding in Habeas Corpus.*

ON the 15th day of December, 1894, the county attorney of Wyandotte county filed an information in the court of common pleas of that county charging

"that said Joseph Perry Smith did, in the county of Wyandotte, state of Kansas, and on or about the 21st day of June, 1894, engage in an unlawful calling, to wit, the calling of managing and operating a lottery, and the selling of lottery tickets, and did then and there establish a lottery for unlawfully disposing and distributing personal property, to wit, money, and did then and there unlawfully set on foot and carry on said lottery, for the purpose of exposing money to be by the lot and chance of certain drawings disposed of, and distributed to and among persons who became purchasers of the tickets therein in said lottery, contrary to the form of the statutes in such case made and provided, and against the peace and dignity of the state of Kansas."

The information contained 12 counts, all of which are the same, excepting the dates as to the alleged offenses. The petitioner was arrested by the sheriff of Wyandotte county, and while in custody made an application to one of the justices of this court for a writ of *habeas corpus*, which was issued, and made returnable on the 4th day of January, 1895. The sheriff of Wyandotte county filed his duly verified return to the writ of *habeas corpus*, setting up a copy of the information filed against Joseph Perry Smith, and the warrant under which Smith was arrested and held in custody. Upon the hearing, the return was excepted to upon the ground that the information did not show that Smith had committed any public offense or violated any provision of the statute,

and that there was no legal reason for his detention or imprisonment. The hearing was had before this court, at the February sitting for 1895. The opinion herein was filed March 9, 1895.

*Junius W. Jenkins, McGrew, Watson & Watson,* and *John A. Hale,* for petitioner:

1. It is sufficient to state that the provision of the constitution of the state, § 3 of article 15, is the only law, organic or otherwise, in Kansas, relating to the subject of lotteries, which is as follows: "Lotteries and the sale of lottery tickets are forever prohibited." There has been no legislation under this constitutional inhibition, so that, under this provision, though in some respects self-executing, it is no crime to maintain lotteries or sell lottery tickets in Kansas. That we are treading on safe ground when we assert that, under this provision, there can be no lottery, nor can lottery tickets be sold, and that all contracts growing out of the prosecution of the business or the sale of lottery tickets are absolutely void, will not be gainsaid. The prohibition is imperative, and any legislative enactment permitting the establishment of lotteries, or the sale of lottery tickets, would be repugnant to the constitution, and, *ex necessitate,* void. See *People v. Hoge,* 55 Cal. 612; *The State v. Babcock,* 19 Neb. 230; *Pierce v. Commonwealth,* 115 Pa. St. 150; *People v. Bradley,* 60 Ill. 393; *The State v. Woodward,* 89 Ind. 110; *Householder v. City,* 83 Mo. 488; *United States v. Reese,* 92 U. S. 21; *McElroy v. Kansas City,* 21 Fed. Rep. 257; *Fusz v. Spaunhorst,* 67 Mo. 256 (269); Sedg. Stat. Law, 281.

A case more closely allied to the one at bar is found in Indiana, under a constitution which provides that "No lotteries shall be authorized, nor shall the sale of lottery tickets be allowed." The language in this provision is so similar to that used in the constitution of Kansas, that any judicial determination of its scope and meaning by the supreme court of that state should be received as sound authority here. See *The State v. Woodward,* 89 Ind. 110.

If it is a crime to sell lottery tickets or conduct a lottery in Kansas, then what crime is it, what is its degree, and what punishment can be inflicted? Is it a felony or a misdemeanor? It is most manifest, without more, that until the legislature of Kansas shall define the nature of the crime and provide for its punishment, the constitution relating to lotteries is, in this respect, a mere *brutum fulmen.*

2. Another view of the case is presented by reference to § 368 of the crimes act, Gen. Stat. of 1889, ¶ 2509, and the information was evidently intended to be based thereon. It provides for the punishment of several distinct acts, and makes the doing of certain things vagrancy. The information does not charge any of the offenses stated in said section, nor do the acts complained of come within the purview of this statute, unless, indeed, by a forced construction the acts complained of may be said to be "engaged in any unlawful calling." The words "any unlawful calling" must be construed, with reference to the preceding language, *ejusdem generis.* The rule of legal construction is, that general words following an enumeration of particulars are to have their generality limited by reference to the preceding particular enumeration, and to be construed as including only all other things of the like nature and quality. See Suth. Stat. Const., §§ 268–277; *White v. Ivey,* 34 Ga. 186; *The State v. McGarry,* 21 Wis. 496; *McIntyre v. Ingraham,* 35 Miss. 25; *The State v. Pemberton,* 30 Mo. 376; *People v. N. Y. & M. B. Rly. Co.,* 84 N. Y. 565; *Sandiman v. Breach,* 7 B. & C. 100; *McDade v. People,* 29 Mich. 50; *St. Louis v. Laughlin,* 49 Mo. 559; *Hall v. The State,* 20 Ohio, 7; *Snyder v. North Lawrence,* 8 Kas. 82; Bish. Stat. Cr., § 245; *Howell v. Stewart,* 54 Mo. 400.

The charge in the information is, "managing and operating a lottery and selling lottery tickets," and "did then and there establish a lottery." Do these acts belong to the same general class as those which, under the statute, constitute vagrancy? They are not, it seems to us, *in pari materia.* There is no analogy between loitering around houses of ill

fame, gambling houses or places where liquors are sold or drank and the acts charged in the information.    Nor is the defendant charged with being "without visible means of support," which is the very essence of the crime, as defined by the statute.

*F. B. Dawes*, attorney general, and *Samuel C. Miller*, county attorney, for The State:

Is the operating of a lottery an unlawful calling?  Webster defines the word "unlawful" to be: "Not lawful, contrary to law, not permitted by law."    Bouvier defines it, "That which is contrary to law."    On behalf of the state, we claim that the carrying on of a lottery is an unlawful occupation, for two reasons, namely: Such an occupation is unlawful by the common law.    By the statute of William III, adopted in 1699, lotteries were prohibited; and therefore it is unlawful to maintain them in the United States, unless there is a statutory permission therefor.    And. Law Dict. 640; *Ex parte Blanchard*, 9 Nev. 101;  4 Bl. Comm. 168.    The constitutional provision against lotteries unquestionably makes the maintaining of a lottery an unlawful calling.    This court has so held in the case of *The State, ex rel., v. Mercantile Association*, 45 Kas. 351–355.   It is true that the constitutional provision does not make the maintaining of a lottery a criminal offense; it provides no punishment for those engaged in that business, but it in effect declares the occupation an unlawful one, and prohibits the legislature from licensing such institutions.

The constitution of the state is not only the law of the state, but it is self-executing, and needs no legislative enactment to put the provisions in force, unless it is otherwise directed in the provisions themselves, or unless they are of such a nature that they necessarily imply that legislation must be had to put them in force.    For a full discussion of this subject, the attention of the court is called to the cases of *Willis v. Sanitation Co.*, 50 N. W. Rep. 1110, and *Brian v. Williamson*, 7 How. (Miss.) 14.

Counsel for the petitioner seem to have misapprehended the

45—54 KAS.

force and effect that must be given to this provision in order that he may be deemed guilty of an offense. It is not claimed on behalf of the state that the constitution makes the maintaining of a lottery a crime. We claim that the provision referred to makes the occupation or calling of managing a lottery unlawful — an unlawful calling — and being so, it is made a crime by the provisions of ¶ 2509 of the General Statutes.

It is probable that no calling can be named that is more nearly akin to the keeping of a gambling house than that of maintaining a lottery. In fact, the keeping of a lottery is not only of the same genus or class of offenses as the keeping of a house of ill fame or a gambling house, but it is of the same species as the latter. The buying and selling of lottery tickets is a kind of gambling, in the nature of the business carried on, with like pernicious effects upon society. Hence, it would seem that a case cannot be found that would come more directly in accord with the statute under which your petitioner stands, and we therefore ask the court that the prayer of the petitioner be not granted.

The opinion of the court was delivered by

HORTON, C. J.: The information in this case was filed under the provisions of § 368 of the crimes act, which reads as follows :

"Any person who may be found loitering around houses of ill fame, gambling houses, or places where liquors are sold or drank, without any visible means of support, or shall be the keeper or inmate of a house of ill fame or gambling house, or engaged in any unlawful calling whatever, or any able-bodied married man who shall neglect or refuse to provide for the support of his family, shall be deemed a vagrant, and, upon conviction thereof, may be fined in any sum not exceeding $500, or by imprisonment in the county jail not exceeding one year." (Gen. Stat. of 1889, ¶ 2509.)

The contention on the part of the petitioner is, that the words " engaged in any unlawful calling whatever " must be construed with reference to the preceding language, and, giv-

ing them such a construction, that the operating or carrying on of a lottery is not an unlawful calling; that such a calling is not within the letter or the spirit of the statute, and, therefore, that the petitioner is not guilty of violating any provision of § 368 of the crimes act. (Gen. Stat. 1889, ¶ 2509.) Adopting this rule of construction, that when there are general words following particular and specific words, the former must be confined to things of the same kind, we are of the opinion that not only is the operation or carrying on of a lottery an unlawful calling, but that it is of like kind to the keeping or carrying on of a gambling house.

Section 3 of article 15 of the constitution of the state ordains, "That lotteries and the sale of lottery tickets are forever prohibited." The constitution, therefore, makes the operation or carrying on of a lottery an unlawful calling, notwithstanding it fails to provide any punishment for those engaged in that business. The legislature cannot charter or license the carrying on of lotteries or the sale of lottery tickets. (*The State, ex rel., v. Mercantile Association*, 45 Kas. 351.) Under the common law, such an occupation was unlawful. (And. Law Dict. 640; *Ex parte Blanchard*, 9 Nev. 101; 4 Bl. Comm. 168.) In general, the words "gaming" and "gambling," in statutes, are similar in meaning, and either one comprehends the idea that by a bet, by chance, or by the transpiring of some event unknown until it occurs, something of value is, as the conclusion of premises, agreed to be transferred from a loser to a winner. (Bish. Stat. Cr., § 858; Black, Law Dict. 530.) The word "gambling" is inclusive of hazarding as well as playing. (*Bennett v. The State*, 2 Yerg. 474.) A lottery is defined as "a hazard in which sums are ventured for a chance of obtaining a greater value." Both gambling and lotteries were nuisance in the eyes of the common law. They are generally prohibited as being detrimental to the public, as promoting unlawful schemes, cheating, and other corrupt practices. The buying and selling of lottery tickets is a species of gaming, and within the inhibition of the act. In *The State, ex rel., v. Mercantile Associa-*

*tion,* supra, our attention was not called to § 368 of the crimes act. In referring in that case to the absence of any statute providing punishment for persons carrying on lotteries, we had in mind the failure of the legislature to impose penalties by a positive statute to carry into force and give effect to § 3 of article 15 of the constitution. The words "without any visible means of support," do not limit or qualify. the subsequent provisions of the statute, and, therefore, they were properly omitted from the allegations of the information. The prisoner will be remanded.

All the Justices concurring.