No. 38,600

THE STATE OF KANSAS, *Appellant,* v. EARL H. BROWN, *Appellee.*

(244 P. 2d 1190)

Opinion filed June 7, 1952.

*John R. Alden,* of Hutchinson, argued the cause, and *Fred C. Preble,* of Hutchinson, and *Harold R. Fatzer,* attorney general, were with him on the briefs for the appellant.

*Frank S. Hodge,* of Hutchinson, argued the cause, and *Roy C. Davis, Eugene A. White, Robert Y. Jones,* and *H. Newlin Reynolds,* all of Hutchinson, were with him on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, J.: This is an appeal from an order sustaining a motion to quash an information in a criminal action.

The prosecution was instituted under the provisions of G. S. 1949, 21-1502, providing:

"Any person who shall sell, or offer to sell, or expose or keep for sale, or advertise for sale, in any manner, or be in any wise concerned in the sale, the offer to sell, exposure to sale, or in advertising for sale, any lottery ticket or pretended lottery ticket, or any writing, printing, token, device or thing purporting to be a lottery ticket, or any writing, certificate or thing intended to evidence the right of the holder to a chance to receive any money or valuable thing as the result of any lottery drawing, and any person who shall sell, offer to sell or advertise for sale the chance to receive any money or valuable thing from the operation of any real or pretended lottery, gift enterprise, policy or scheme in the nature of a lottery, and any person who shall have in charge and use any device in determining the chance upon which property or money is to be procured, either in whole or in part, at another's expense, shall be guilty of a felony, and upon conviction shall be punished by imprisonment at hard labor in the penitentiary for a term not less than one year nor more than three years."

Omitting formal allegations of no importance to the issues, the information, which is in three counts and specifically charges that action on the part of the defendant as set forth in each of such counts constitutes a violation of the quoted statute, reads:

". . . that on the 27th day of February, A. D., 1951, in said County of Reno and State of Kansas, one Earl H. Brown, then and there being, did then and there unlawfully, feloniously, and willfully sell to John D. Wright, d. b. a. Brown Motor Court, certain lottery tickets described as follows, to-wit:

"1 Lulu type punch board containing therein certain tokens, tickets or slips of paper with certain numbers written thereon intended to evidence the right of the holder to a chance to receive money, property or some valuable thing as the result of a lottery drawing, commonly called 'Lulu Board', thereafter to be held . . .

## "Second Count

". . . that on the 27th day of February, A. D., 1951, in said County of Reno and State of Kansas, one Earl H. Brown, then and there being, did then and there unlawfully, feloniously, and willfully sell to C. Winkleman certain lottery tickets described as follows, to-wit:

"Approximately 10 punch boards including therein certain tokens, tickets or slips of paper with certain numbers written thereon intended to evidence the right of the holder to a chance to receive money, property or some valuable thing as a result of a lottery drawing, thereafter to be held. . . .

## "Third Count

". . . that on the 27th day of February, A. D., 1951, in said County of Reno and State of Kansas, one Earl H. Brown, then and there being, did then and there unlawfully, feloniously, and willfully keep for sale certain lottery tickets described as follows, to-wit:

"Approximately 812 punch boards of various and sundry types and sizes, all of which include thereon and therein certain tokens, tickets and slips of paper and certain numbers written thereon intended to evidence the right of the holder to a chance to receive money, property and other valuable things as the result of a lottery drawing, thereafter to be held. . . ."

The defendant moved to quash the information on grounds that none of the counts therein set forth contained allegations of fact sufficient to constitute a public offense under the provisions of G. S. 1949, 21-1502. When this motion was sustained by the trial court the state, as the statute permits (G S. 1949, 62-1703), perfected this appeal.

At the outset, doubtless because it is obvious there can be no lottery tickets without the existence of a lottery, the appellant contends that punchboards such as are described in the information are lotteries *per se* and therefore prohibited under the constitution (Art. 15, Sec. 3) and statutes of this state (G. S. 1949, 21-1501 to 1506, Incl.).

Long ago in *The State, ex rel., v. Mercantile Association,* 45 Kan. 351, 25 Pac. 984, this court held, that a scheme for the distribution of prizes by chance is a lottery. Later in *Davenport v. City of Ottawa,* 54 Kan. 711, 39 Pac. 708, a criminal case, it held the sale of merchandise, even at the usual price, included the purchase price of tickets to a chance adventure advertised by the merchant and that such transactions were in effect sales of merchandise and lottery tickets for an aggregate price. Still later in *State, ex rel., v. Fox Theatre Co.,* 144 Kan. 687, 62 P. 2d 929, it held that in this state any gift enterprise, policy or scheme of drawing in the nature of a lottery is prohibited and illegal.

Quite recently in *City of Wichita v. Stevens,* 167 Kan. 408, 207 P. 2d 386, we said:

". . . A gambling device is any instrument adapted and designed to play any game of chance for money or property. . . ." (p. 413.)

And held:

"Punchboards, with or without merchandise or prizes attached to them, have no use except for purposes of gambling and are gambling devices regardless of where they may be kept or located." (Syl. ¶ 2.)

Based on the foregoing decisions we have little difficulty in concluding that the punchboards described in the information are gambling devices and/or schemes designed for the distribution of prizes by chance and hence, within the meaning of that term as used in our constitution and statutes, must be regarded as "lotteries" *per se.* This conclusion, it may be added, finds support in, and is upheld by, numerous well reasoned decisions (See *State v. Hudson,* 128 W. Va. 655, 87 S. E. 2d 553, 163 A. L. R. 1265; *In re Gray,* 23 Ariz. 461, 204 Pac. 1029; *State v. Crown Cigar Store,* 124 Mont. 310, 220 P. 2d 1029; *Brewer v. Woodham, et al.,* 15 Ala. App. 678, 74 So. 763, *Stanger v. The State,* 107 Tex. Cr. R. 574, 298 S. W. 906; *Helen Ardelle, Inc. v. Federal Trade Commission,* 101 Fed. 2d 718; *Callison v. State* (Tex. Civ. App.), 146 S. W. 2d 468; *City of Shreveport v. Kahn,* 136 La. 371, 67 So. 35; *Queen v. The State,* 93 Tex. Cr. R. 173, 246 S. W. 384).

Appellee does not question the power of the legislature to prohibit lotteries or the sale of lottery tickets. Neither does he attempt to deny a punchboard is a lottery *per se.* Instead he contends that a punchboard so regarded is not a lottery ticket and therefore may be sold and kept for sale with impunity notwithstanding and irrespective of the prohibitions of 21-1502, *supra.* This contention attempts to make a distinction without a difference and is more theoretical than real for the obvious reason it wholly ignores the reality of what a punchboard actually is, namely, a series, a set, or a group of lottery tickets. Moreover, it refuses to recognize express averments of each of the three counts of the information wherein appellee is charged with either keeping for sale or selling certain lottery tickets, to be found in a punchboard or punchboards therein described, intended to evidence the right of the participant in a lottery to receive money, property or other valuable things as the result of a subsequent lottery drawing. These averments, in our opinion, are sufficient to charge the appellee with the very thing

prohibited by the first clause of the heretofore quoted statute, *i. e.*, the keeping for sale or selling of lottery tickets, and the fact such tickets are described as contained in a punchboard or punchboards in no sense changes their status as devices prohibited by its terms.

Reference to 21-1502, *supra*, discloses it is divided into three distinct clauses or divisions which, among other acts not here important, prohibit: (1) *Any person* from selling or keeping for sale a lottery ticket or tickets; (2) *any person* from selling, offering to sell or advertising for sale the chance to receive any money or valuable thing from the operation of any gift enterprise, or scheme in the nature of a lottery, and (3) *any person* from having in charge and using any device in determining the chance upon which money is to be procured, either in whole or in part at another's expense. Appellee contends it takes all three of the foregoing clauses or divisions to constitute a public offense because they are joined by the conjunction "and". We do not agree. To give the statute such a construction the words "any person" must be omitted from the second and third clauses or divisions and wholly ignored. This would result in a violation of the well settled rule that in construing a statute such meaning will be given to the words of the statute construed as will make them all effective, unless by doing so the purpose of the legislature will be defeated. By the first clause or division to which we have heretofore referred the sale and keeping for sale of lottery tickets, either before or after actual operation of the lottery, is made an offense, by the second the sale of the chance while operating the lottery, whether it be in the form of a ticket or some other device, is made a crime, and by the third persons who have in charge and use any device in determining the chance upon which those participating in a lottery are to receive money or property are made amenable. Moreover, on further examination of the terms of the statute, it becomes apparent the "any person" referred to in the first clause or division cannot be said to be the "any person" referred to in the second and third or the "any person" mentioned in the second the "any person" contemplated by such term as used in the third. All this makes it clear that by the language used the legislature, in accord with the constitutional mandate forever prohibiting lotteries and the sale of lottery tickets in this state, and notwithstanding its use of the conjunctive "and", intended to state and define three separate and distinct offenses which would effectively prohibit any and all acts covering the field of a lottery operation. With the statute so construed the first clause thereof, in lan-

guage so clear and unequivocal as to require no judicial construction, prohibits any person from selling lottery tickets or keeping such tickets for sale.

The appellee, as we have seen, is charged in two counts of the information with the sale of lottery tickets and in a third count with having kept certain lottery tickets for sale. Therefore, based on what has been heretofore said and held it necessarily follows the trial court erred in sustaining the motion to quash and in discharging the appellee on the ground allegations of the information failed to charge him with the commission of a public offense.

In reaching the conclusion just announced we have not overlooked appellee's arguments to the effect that ordinarily criminal statutes are to be strictly construed. That is the general rule (*State v. Waite*, 156 Kan. 143, 131 P. 2d 708). The trouble from appellee's standpoint is, that where—as here—the language of a penal statute is plain and unambiguous and conveys a clear and definite meaning, all well recognized authorities hold there is no occasion for resorting to the rule on which he relies and that even in those cases where it is invoked its application does not justify disregard of clear and manifest legislative intent. 50 Am. Jur. Statutes, 435 § 410; 59 C. J., Statutes, 1113 to 1119, incl. §§ 659 and 660; *Head v. Hunter*, 141 Fed. 2d 449; *State v. Friedman*, 135 N. J. L. 419, 52 Atl. 2d 416.

Neither have we been unmindful of contentions to the effect 21-1502, *supra*, does not require, and the information does not allege, criminal intent on the part of the appellee in committing the acts with which he is charged. The answer to these contentions is to be found in our own reports. See *The State v. Bush*, 45 Kan. 138, 25 Pac. 614, which holds:

"When the commission of an act is made a crime by statute, without any express reference to any intent, then the only criminal intent necessarily involved in the commission of the offense is the intent to commit the interdicted act; and in such a case it is not necessary to formally or expressly allege such intent, or any intent, but simply to allege the commission of the act, and the intent will be presumed." (Syl. ¶ 3.)

To the same effect are *The State v. Pierce*, 52 Kan. 521, 526, 35 Pac. 19; *Yoe v. Hoffman*, 61 Kan. 265, 276, 59 Pac. 351; *The State v. Rennaker*, 75 Kan. 685, 90 Pac. 245; *City of Hays v. Schueler*, 107 Kan. 635, 193 Pac. 311; *State v. Avery*, 111 Kan. 588, 207 Pac. 838.

For decisions of foreign states recognizing the rule above quoted and dealing specifically with cases involving the sale, possession,

and printing of lottery tickets, see *Ford v. State,* 85 Md. 465, 37 Atl. 172; *La Russa v. State,* 142 Fla. 504, 196 So. 302. See, also, *State v. Butler,* 42 N. M. 271, 279, 76 P. 2d 1149, where, although intent was made an element of the crime prohibited by the statute there in question, the rule is recognized and discussed.

Nor have we ignored decisions relied on by appellee as supporting the trial court's decision. It suffices to say they have been carefully examined and that no one of them has been found to sustain his contentions to the effect that a statute such as is here involved is invalid or that an information containing allegations such as have been herein described fails to state a public offense under its terms.

The judgment of the trial court is reversed with directions to proceed with the trial of the case.