No. 44,201

STATE OF KANSAS, *Appellant*, v. JAMES AARON LOGAN, *Appellee*.

(424 P. 2d 565)

Opinion filed March 4, 1967.

*Sherman A. Parks,* assistant attorney general, argued the cause, and *Robert C. Londerholm,* attorney general, *Leo J. Moroney,* county attorney, and *Francis D. Menghini,* assistant county attorney, were with him on the brief for the appellant.

No appearance for the appellee.

*George L. Gisler,* of Kansas City, Missouri, and *John Anderson, Jr.,* of Olathe, filed a brief for *amicus curiae,* Berbiglia, Inc.

The opinion of the court was delivered by

O'Connor, J.: This is an appeal by the state in a criminal action on questions reserved pursuant to K. S. A. 62-1703 (*third*). The defendant was acquitted of the charges leveled against him and, regardless of the disposition of the case, cannot be retried. (*State v. Inzerillo*, 191 Kan. 586, 383 P. 2d 546.)

The questions presented relate solely to the court's instructions to the jury and can best be understood after a brief factual resumé.

The defendant, a long-time employee of a liquor store in Kansas City, Missouri, was convicted on May 11, 1964, in a justice of the peace court in Wyandotte county of two violations of the Kansas liquor control act: transportation and possession of alcoholic liquor not bearing Kansas tax stamps, contrary to K. S. A. 41-104 and K. S. A. 41-407. On appeal to the district court a jury found the defendant not guilty on both charges. The defendant's version of the events leading up to his arrest was that he was to deliver some liquor from his employer's store located at 1801 West Forty-third to the employer's other store located at 1606 West Seventy-fifth. Both stores are located in Missouri yet are in close proximity to the Missouri-Kansas line. In the process of going from one store to the other, defendant came across the state line into Kansas to buy a sandwich at the Rosedale Barbecue. Shortly after leaving the barbecue, the defendant was stopped on Mission Road in Wyandotte county by an agent of the Alcoholic Beverage Control. In the station wagon operated by defendant were found several cases of alcoholic liquor and beer, none of which bore stamps evidencing payment of gallonage tax to the state of Kansas. Some of the liquor and beer containers were packaged in brown paper and had on them the name of a Kansas resident who lived approximately two blocks from the place of arrest.

During cross-examination of the state's witnesses, and the direct examination of the defendant, defendant's counsel was permitted, over the state's objection, to pose questions and elicit answers relating to the defendant's purpose and intent in transporting and possessing the liquor within the state of Kansas. The significance of this evidence becomes apparent when the court's instructions to the jury are scrutinized.

We shall concern ourselves with those instructions which form

the basis for the state's first assignment of error. They are as follows:

"3. Section 41-104 of the Act provides that: 'No person shall manufacture, bottle, blend, sell, barter, transport, deliver, furnish or possess any alcoholic liquor for beverage purposes' unless it has the Kansas tax stamp affixed thereto.

"4. The words in that statute 'for beverage purposes' may require some definition. The word 'beverage' is commonly defined as 'liquid for drinking.' The word 'purpose' for all practical purposes is the same as 'intention.'

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"10. As to the charge made under Section 41-104, it is incumbent upon the State to prove to your satisfaction beyond a reasonable doubt:

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"(2) that said liquor was so transported or possessed for beverage purposes."

The state criticizes the court's definition of the phrase "for beverage purposes" and claims the above instructions create the impression that the state was required to prove the defendant transported or possessed alcoholic liquor with the intention of drinking the same himself, or that it be drunk by someone else.

The criticism is completely justified. The instructions, in our opinion, not only were misleading, but also were inaccurate statements of what the legislature intended in its use of the entire phrase "alcoholic liquor for beverage purposes" in K. S. A. 41-104. By defining the words, "beverage purposes," separately, the court removed them from the context of the statute, with the result that the defendant's intention or purpose in transporting and possessing the alcoholic liquor became the all-important question for the jury's determination.

It is a fundamental rule of statutory construction that penal statutes are to be strictly construed in favor of persons sought to be subjected to their operation. The rule merely means that ordinary words are to be given their ordinary meanings. A penal statute should not be read so as to add that which is not readily found therein, or to read out what, as a matter of ordinary language, is in it. (*State, ex rel., v. American Savings Stamp Co.,* 194 Kan. 297, 398 P. 2d 1011, and cases cited therein.) Nor does the rule of strict construction permit or justify a disregard of manifest, legislative intent (*State v. McGaugh,* 180 Kan. 850, 308 P. 2d 85; *State v. Brown,* 173 Kan. 166, 244 P. 2d 1190), which must be determined from the words used in the enactment to express that intention.

In *State v. Summer,* 169 Kan. 516, 219 P. 2d 438, the court, in interpreting certain sections of the liquor control act, said:

"In order to ascertain the legislative intent courts are not permitted to consider only a certain isolated part or parts, of an act but are required to consider and construe together all parts thereof *in pari materia.*

"It is the duty of courts to reconcile various provisions of an act in order to make them consistent, harmonious and sensible if that can be done without doing violence to plain provisions therein contained." (Syl. ¶¶ 1, 2.)

We note that the term "beverage purposes" is not included in the definitions set forth in K. S. A. 41-102; however, "alcoholic liquor" is said to include:

". . . the four varieties of liquor as defined herein, namely, alcohol, spirits, wine and beer, and every liquid or solid, patented or not, containing alcohol, spirits, wine or beer, and *capable of being consumed as a beverage* by a human being, but shall not include any beer or cereal malt beverage containing not more than three and two-tenths percent (3.2%) of alcohol by weight." (Emphasis added.)

By the provisions of K. S. A. 41-104, a person is prohibited from manufacturing, bottling, blending, selling, bartering, transporting, delivering, furnishing or possessing "any alcoholic liquor for beverage purposes," except as specifically provided in the act.

K. S. A. 41-105 specifies those items to which the act is inapplicable, and states in part as follows:

"None of the provisions of this act shall apply: . . . (2) to flavoring extracts, syrups, or medicinal, mechanical, scientific, culinary or toilet preparations, or food products *unfit for beverage purposes.* . . ." (Emphasis added.)

We are cited to no authority that is particularly helpful in construing the phrase "for beverage purposes." Our limited research, however, reveals a case (*Woolworth v. State,* 72 Okla. Cr. 125, 113 P. 2d 399) wherein the court in our sister state was called upon to determine whether or not bay rum was a liquid compound "capable of being used as a beverage" within the meaning of that state's prohibition statute. In the course of its opinion the court construed the phrase—"capable of being used as a beverage"—as meaning a liquid that

". . . is reasonably capable of being drunk, either for the pleasure of drinking or its after effect, and does not apply to a liquid that it is possible to swallow, but not reasonably fit or palatable. . . ." (Syl. ¶ 2.)

The Oklahoma court, in its decision, relied heavily on the language of Mr. Justice Brewer in our early case of *Intoxicating-Liquor Cases,*

25 Kan. 751, which dealt with the interpretation of our prohibitory law enacted in 1881 (L. 1881, ch. 128).

The similarity between the phrases "capable of being used as a beverage" and "capable of being consumed as a beverage" as found in K. S. A. 41-102(2), defining "alcoholic liquor," is obvious. The words of the Oklahoma court are enlightening in that inherent in the definition therein stated is the recognition that a liquid, although containing alcohol, may or may not be capable of being used as a beverage. The need for such distinction was recognized by our lawmakers when they sought to delineate between "alcoholic liquor for beverage purposes" in K. S. A. 41-104 and those items, although containing alcohol, spirits, wine, or beer, that are designated as "unfit for beverage purposes" in K. S. A. 41-105(2).

The manifest purpose of the legislature, as expressed in our liquor control act, was to channelize the traffic in alcoholic liquor; to minimize the commonly attendant evils; and to facilitate the collection of revenue. The basic premise of the act, as stated in K. S. A. 41-104, is that of total prohibition of the manufacture, sale, barter, transportation, delivery or possession of alcoholic liquor *as a beverage*, unless otherwise specifically provided. (*State v. Payne*, 183 Kan. 396, 327 P. 2d 1071.)

In carrying out its comprehensive, regulatory scheme, the legislature was concerned with the character and nature of the product involved, and sought to regulate, among other activities, the transportation and possession of any product coming within the classification of "alcoholic liquor" as a beverage. Such classification includes the requirement that it be capable of being consumed as a beverage by a human being (K. S. A. 41-102(2)), as distinguished from those items not within the classification which are "unfit for beverage purposes" (K. S. A. 41-105(2)). "Alcoholic liquor for beverage purposes" (K. S. A. 41-104) necessarily relates to "alcoholic liquor" as defined in K. S. A. 41-102(2). This we conclude from the language of the statutes when construed together. What has been said, however, is intended neither to detract from nor add to those products which by express language have been placed in the respective categories.

We have long recognized in this state that alcoholic liquor is a commodity directly affecting public welfare and, therefore, occupies a special position with respect to the exercise of the state's police power. (*State v. Payne*, supra, quoting from *State v. Durein*, 70

Kan. 13, 80 Pac. 987.) That it is within the power of the legislature to forbid the doing of an act and make its commission criminal, without regard to the intent or knowledge of the doer, is well established in our jurisprudence. (*State, ex rel., v. Fairmount Foods Co.,* 196 Kan. 73, 410 P. 2d 308; *State v. Merrifield,* 180 Kan. 267, 303 P. 2d 155; *State v. Beam,* 175 Kan. 814, 267 P. 2d 509; *State v. Brown,* 173 Kan. 166, 244 P. 2d 1190; *City of Hays v. Schueler,* 107 Kan. 635, 193 Pac. 311, 11 A. L. R. 1433; *State v. Rennaker,* 75 Kan. 685, 90 Pac. 245; *State v. Bush,* 45 Kan. 138, 25 Pac. 614.)

The principle is well stated in 1 Wharton's Criminal Law and Procedure, § 17, as follows:

"It is within the power of the legislature to declare an act criminal irrespective of the intent or knowledge of the doer of the act. In accordance with this power, the legislature in many instances has prohibited, under penalty, the performance of specific acts. The doing of the inhibited act constitutes the crime, and the moral turpitude or purity of the motive by which it was prompted and the knowledge or ignorance of its criminal character are immaterial circumstances on the question of guilt. The only fact to be determined in these cases is whether the defendant did the act. . . ." (p. 28.)

In *State v. Avery,* 111 Kan. 588, 207 Pac. 838, 23 A. L. R. 453, the defendant urged that the criterion of guilt in criminal law was wrongful intent. The court, in answering the contention, said:

". . . the legislature may, for protection of the public interest, require persons to act at their peril, and may punish the doing of a forbidden act without regard to the knowledge, intention, motive, or moral turpitude of the doer. There is no constitutional objection to such legislation, the necessity for which the legislature is authorized to determine. . . ." (p. 590.)

In view of what has been said, the intention of a person who transports or possesses alcoholic liquor contrary to the provisions of the act is immaterial. The gravamen of such offenses is that the transportation or possession involves a product within the statutory definition of "alcoholic liquor."

The state further assigns as error instruction No. 12, which was as follows:

"As to the charge made under Section 41-407, the Court is of the opinion that, considering the heading of the section, to-wit: 'Evasion of liquor tax; acts forbidden; penalty' the sections (1) and (2) must be considered together and that for possession of unstamped liquor within the State of Kansas to be a crime, it must be with *the intent to evade the liquor tax.* Therefore, in order to secure a conviction under 41-407, it is incumbent upon the State to prove to your satisfaction beyond a reasonable doubt:

"(1) that defendant did have in his possession liquor on which the Kan-

sas tax had not been paid and which did not bear the requisite Kansas stamp; and

"(2) that the *intent* of defendant, or his employer, in having such liquor within the State of Kansas was *to evade the Kansas tax* on such liquor." (Emphasis added.)

In giving instruction No. 5, the court set out the relevant sections of K. S. A. 41-407 in the following manner:

" '41-407. *Evasion of liquor tax; acts forbidden; penalty.* It shall be unlawful for any person (1) to evade, or attempt to evade, the payment of tax or duty on any such alcoholic liquor, in any manner whatever. . . . (2) to have in his possession any cask or package of such liquor without having thereon each mark and stamp required therefor by law. . . .' "

Reading K. S. A. 41-407 in its entirety, we find four separate sections specifically stating four, distinct, proscribed acts. No where in the entire statute is language found showing the prohibited act of any one section is dependent upon that of another section within the statute in order to constitute an offense. Each section is complete within itself about the act forbidden. Notwithstanding the trial court's apparent conclusion to the contrary, the heading of a statute forms no part of the statute itself. (*Becker v. Roothe*, 184 Kan. 830, 339 P. 2d 292.) The alleged violation with which the lower court was concerned in instruction No. 12 was section (2) relating solely to possession, and it was improper for the court to instruct the jury that sections (1) and (2) were to be considered together.

We are further satisfied the offense prohibited by section (2) of K. S. A. 41-407 is that of possession of any alcoholic liquor without Kansas tax stamps affixed to the container thereof. (See *State v. Wilson*, 169 Kan. 659, 220 P. 2d 121.) There is no requirement that such possession be with the intent to evade the payment of tax thereon. Hence, the court's instruction to the contrary was erroneous.

Much of what has been said in disposing of the first specification is equally applicable and controlling in our answer to the present point. More germane, however, is the rationale of those cases involving violations of our former worthless check statute (G. S. 1949, 21-554) in which it was frequently urged that "intent to defraud" was an element of the offense.

In *State v. Avery*, supra, the court held "intent to defraud" was not an element of the offense, and a similar conclusion was reached in *State v. Morris*, 190 Kan. 93, 372 P. 2d 282. The defendant in *State v. Gillen*, 151 Kan. 359, 99 P. 2d 832, urged that if "intent to

defraud" was an element of the abatement statute (G. S. 1949, 21-556), then it must be an element of the worthless check statute. The court disposed of the contention by relying on *State v. Avery,* supra, saying that the question of intent being an element of the offense was a matter for the legislature. There the law remained until 1963 when the legislature saw fit to specifically make "intent to defraud" an element of the statute (K. S. A. 21-554). See *State v. Shannon,* 194 Kan. 258, 398 P. 2d 344, cert. denied 382 U. S. 881, 15 L. Ed. 2d 122, 86 S. Ct. 172, rehearing denied 382 U. S. 922, 15 L. Ed. 2d 238, 86 S. Ct. 298.

Thus, it is plain that the legislature can, if it so desires, require that intent be an essential element of an offense. In the absence of language manifesting such a requirement, the only fact to be determined is whether or not a person committed the act proscribed.

We have not overlooked the cases cited by *amicus* in its brief, but find them clearly inapplicable to the questions raised by the state. The major portion of the brief is devoted to a point not presented to the trial court and, therefore, not reviewable by this court.

From what has been stated, we must conclude the state's appeal is well founded, and the same is sustained.