No. 46,636

STATE OF KANSAS, *Appellant*, v. VICTOR NELSON, HELEN L. HUTTON and JOSEPH E. CULVER, *Appellees*.

(502 P. 2d 841)

Opinion filed November 4, 1972.

*Vern Miller,* attorney general, argued the cause, and *Edward G. Collister, Jr.,* assistant attorney general, and *Mitchell H. Bushey,* county attorney, were with him on the brief for the appellant.

*Robert V. Talkington,* of Conderman & Talkington, of Iola, argued the cause, and *J. D. Conderman,* of the same firm, was with him on the brief for the appellees.

The opinion of the court was delivered by

Owsley, J.: Criminal charges were filed in the district court of Allen County, Kansas, against each of three defendants for violating gambling laws. Following a trial to the court the district court ruled as a matter of law that the conduct of the defendants as set forth in the informations was not a violation of K. S. A. 1971 Supp. 21-4307 and 21-4303 in view of K. S. A. 1971 Supp. 21-4302 (1) *(d),* (2), (3), and (4). The state appeals.

The criminal charges originated as a result of a gambling raid conducted on June 18, 1971, in Iola, Kansas. On that date agents of the attorney general's office entered the Iola American Legion Club. Upon entering the agents observed two persons, defendants Hutton and Culver, in close proximity to five slot machines. Defendant Hutton appeared to be taking money from the coin return on one of the machines. Defendant Hutton admitted on direct examination that she had been playing the machines earlier in the evening. Culver, according to testimony of a special agent of the attorney general's office, had his hand on the handle of one of the machines, and released it after the agent entered the room. Culver testified that at the time the agents entered the room he was not playing the machines, but admitted that he had played the slot machines earlier.

Defendant Nelson was the acting club manager of the American Legion club. He admitted that he had custody of the slot machines and the keys to them, and that he had set up the slot machines that were identified during the testimony. It was testified that the funds from the above machines went to the club treasury. It was stipulated that the club was a Class A club, licensee of the Alcoholic Beverage Control Agency, and that the club was exempt from the Federal Income Tax under the provisions of the Internal Revenue Act.

Defendant Nelson was charged with possession of a gambling

device, contrary to K. S. A. 1971 Supp. 21-4307. Defendants Hutton and Culver were charged with gambling in violation with K. S. A. 1971 Supp. 21-4303.

The trial court held as a matter of law that the conduct disclosed by the evidence and alleged as violation of the criminal laws of the state did not constitute a crime because of the so-called "bingo" exception to the definition of gambling adopted by the 1971 Kansas legislature.

The parties agree there is only one issue presented in this appeal and that is whether the phrase "bingo and games of comparable characteristics," as it is used in K. S. A. 1971 Supp. 21-4302, includes slot machines.

The new Kansas Criminal Code (Chapter 180, 1969 Session Laws) revised the laws of this state as to gambling. The former statutes, K. S. A. 21-915 through 21-936, and 21-1501 through 21-1510 approached gambling by prohibiting specific activities. The approach of the new code attempts to define prohibited conduct in a general way. The new code also amended the procedural provisions which were contained in the former law.

In the 1971 session the legislature amended the gambling laws in Chapter 111, Section 1 (now K. S. A. 1971 Supp. 21-4302). Portions of the amendment pertinent to this appeal are as follows:

"(1) A 'bet' is a bargain in which the parties agree that, dependent upon chance, one stands to win or lose something of value specified in the agreement. A bet does not include:

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"(d) Any bingo game or a game of chance with comparable characteristics by or for participants conducted by an organization exempt from tax under paragraphs (3), (4), (7), (8) and (10) of subsection (c) of section 501 of the internal revenue code of 1954, as amended, if no part of the gross receipts derived from such activity inures to the benefit of any private shareholder, member or employee of such organization, except as compensation for actual expenses incurred by him in the conduct of such activity and provided that such game is conducted or operated by the officers, employees or members of such organization without compensation therefor other than that to which the officer, employee or member is entitled for the performance of his regular duties, and not by agreement or contract with any other person or organization for which any consideration or compensation is provided.

"(2) A 'lottery' is an enterprise wherein for a consideration the participants are given an opportunity to win a prize, the award of which is determined by chance.

"(3) .   .   .   .   .   .   .   .   .   .   .   .   .

"As used in this subsection, the term 'consideration' shall not include sums of money paid by or for participants in any bingo game or a game of chance

with comparable characteristics as defined by subsection (d) of this section and it shall be conclusively presumed that such sums paid by or for said participants were intended by said participants to be for the benefit of the organizations described in subsection (d) of this section for the use of such organizations in furthering the purposes of such organizations, as set forth in paragraphs (3), (4), (7), (8) and (10) of subsection (c) of section 501 of the internal revenue code of 1954, as amended."

A slot machine is designed and utilized as a gambling device. We held in *State, ex rel., v. Myers*, 152 Kan. 52, 102 P. 2d 1028, that a slot machine is a gambling device per se. Other states have found slot machines to be lotteries. (*State v. Brotherhood of Friends*, [Wash. 1952], 247 P. 2d 787.) The judicial council notes appended to K. S. A. 1971 Supp. 21-4302 state a "slot machine is probably the most familiar type of gambling device."

Bingo may provide fun and amusement to adults and children without prizes and without consideration. Bingo as used in the above statutes, however, contemplates payment for the right to play and contemplates the award of prizes. This is apparent since the statute provides "consideration shall not include sums of money paid" to take part in a bingo game and provides the money paid is for the benefit of tax exempt organizations. As we refer to bingo in this opinion it is labeled in accord with the statutes as a game for which a consideration is paid for the right to participate.

The defendants contend these statutes should be strictly construed against the state and when so construed a slot machine falls within the exception. Defendants also contend the burden of proof is on the state and the record in this case does not furnish a basis for convicting the defendants without engaging in speculation and extending judicial notice beyond its legal concept. Defendants further argue that bingo and slot machines are comparable in all characteristics except that bingo involves group participation while the use of a slot machine is a lone wolf operation. They further argue that it is not reasonable to believe the legislature could have intended to discriminate against the individual who chooses to gamble by himself rather than to join a group of fellow gamblers.

The state contends that slot machines are not games of chance "with comparable characteristics"; hence, they are not exempt from the penal provisions of the gambling laws. The state's argument is a combination of distinguishing the characteristics of bingo and slot machines, and determining the legislative intent. The state points out that the trial court concluded slot machines have the same

characteristics as bingo since each involves the elements of consideration, prize and chance. The state argues that the import of the trial court's conclusion would allow any form of gambling by exempt organizations since all lotteries have the characteristics of consideration, prize and chance.

The parties have limited their argument to the issue above stated. In discussing the distinctions and similarities of bingo and slot machines, both parties refer to the definition of lotteries as judicially determined by this court. The assertions of each intermingle and intertwine the elements of a lottery. This is unavoidable since all judicial declarations of this court relating to gambling are focused on and centered around the definition of a lottery. We are exposed to the same difficulty as the litigants. We cannot intelligently dispose of this litigation without considering and discussing the elements of a lottery. In doing so, we cannot avoid making a determination of the constitutionality of the so-called "bingo law."

In *Keplinger v. Kansas City.*, 122 Kan. 158, 251 Pac. 413, we approved the following language from 12 C. J. 780:

". . . 'It is a well-settled principle that the constitutionality of a statute will not be determined in any case, unless such determination is absolutely necessary in order to determine the merits of the suit in which the constitutionality of such statute has been drawn in question.'" (p. 164.)

In *Clewell v. School District.*, 115 Kan. 176, 222 Pac. 74, we held:

". . . We cannot undertake to determine a constitutional question unless it is necessary to a decision of the questions involved and the determination of the constitutionality of a statute is imperatively required. . . ." (p. 177.)

We held in *State, ex rel., v. School District*, 163 Kan. 650, 185 P. 2d 677:

". . . [T]his court ought not to consider the constitutionality of the statute in any particular not necessary to a decision and that under the facts of the cause, there is no such necessity." (Syl. ¶ 8.)

We held in *Board of County Commissioners v. Brown*, 183 Kan. 19, 325 P. 2d 382:

"Acts of the legislature are presumed to be constitutional and valid and no challenge thereof should be entertained on appeal to the Supreme Court unless the particular constitutional provision alleged to be violated, or the particular controlling record to prove the invalidity, has been alleged in the pleadings and presented to the lower court." (Syl. ¶ 2.)

The wisdom of the decisions in *Keplinger* and *Clewell* that a situation might arise justifying an unrequested inquiry into the

constitutionality of a statute is manifested by the facts presented in this case.

Article 15, Section 3 of the Kansas Constitution provides: "Lotteries and the sale of lottery tickets are forever prohibited."

Although this constitutional provision was undoubtedly borrowed from states previously admitted to statehood, it is apparent that the framers of the constitution of this state conscientiously determined that prohibiting lotteries forever was a method of promoting a sound basis for the welfare and growth of this state. Since its adoption, many efforts have been made by persons and organizations to circumvent this constitutional provision. Such efforts have generally been made for profit, seeking to elicit money from those who cannot refrain from the instinctive weakness of humanity to gamble.

This court has steadfastly adhered to the constitutional provision by striking down such efforts. (*The State ex rel. v. Mercantile Association,* 45 Kan. 351, 25 Pac. 984, [distribution of prizes by chance]; *In re Smith, Petitioner,* 54 Kan. 702, 39 Pac. 707, [sale of lottery tickets]; *The State, ex rel. v. Fair Association,* 89 Kan. 238, 131 Pac. 626, [bets on horse races]; *State, ex rel., v. Fox Kansas Theatre Co.,* 144 Kan. 687, 62 P. 2d 929, [theater bank night]; *City of Wichita v. Stevens,* 167 Kan. 408, 207 P. 2d 386, [punch boards]; *State v. Brown,* 173 Kan. 166, 244 P. 2d 1190, [punchboards]; *State, ex rel., v. Bissing,* 178 Kan. 111, 283 P. 2d 418, [parimutuel betting on dog races].)

It has been firmly established from these cases as the law of this state that a lottery has three essential elements; namely, (1) consideration, (2) prize, and (3) chance.

In *State, ex rel., v. Highwood Service, Inc.,* 205 Kan. 821, 473 P. 2d 97, we held that the turning of a dial of a television set to a certain program which awarded prizes did not constitute "consideration" within the meaning of K. S. A. 21-1501 (repealed L. 1969, ch. 180) and Article 15, Section 3 of the Kansas Constitution. We also stated at page 825:

"But while the constitutional ban against lotteries may be self-executing, it is not self-defining. That function is judicial in nature, devolving upon the courts. . . ."

The essential difference between a constitution and a statute is that a constitution usually states general principles or policies, and establishes a foundation of law and government, whereas a statute must provide the details of the subject of the statute. A constitution,

unlike a statute, is intended not merely to meet existing conditions, but to govern future contingencies.

Although a constitution is usually a declaration of principles of fundamental law, many of its provisions being only commands to the legislature to enact laws to carry out the purposes of the framers of the constitution, it is entirely within the power of those who establish and adopt the constitution to make any of its provisions self-executing. Our constitution put a ban on lotteries and the sale of lottery tickets in plain, unambiguous terms and emphasized the intent of the framers by the use of the language "shall be forever prohibited in this state." Prohibitory provisions in a constitution are self-executing to the extent that anything done in violation of them is void.

It is the function and duty of this court to define constitutional provisions. The definition should achieve a consistency so that it shall not be taken to mean one thing at one time and another thing at another time. It is the nature of the judicial process that the construction becomes equally as controlling upon the legislature of the state as the provisions of the constitution itself. (16 C. J. S. Constitutional Law, § 13.) Any attempt by the legislature to obliterate the constitution so construed by the court is unconstitutional legislation and void. Whenever the legislature enacts laws prohibited by judicially construed constitutional provisions, it is the duty of the courts to strike down such laws.

The legislature, by enacting the statutes in question, attempted to declare that "consideration" shall not include money paid to participate in a bingo game. The legislature, in effect, sought to remove "consideration" as one of the elements of a lottery. In so doing, the legislature exceeded its constitutional power. The constitution must be interpreted and given effect as the paramount law of the state, according to the spirit and intent of its framers. A legislative enactment in evasion of the terms of the constitution, as properly interpreted by the courts and frustrating its general and clearly expressed or necessarily implied purpose, is clearly void.

The fact that the statute prohibits a profit to any private shareholder, member or employee of an organization exempt from tax, does not create immunity for an enterprise which violates the provisions of the constitution. We cannot insert into our constitution an exception that the framers failed to make. Their reasoning could have been in accord with *Harriman Institute of Social R. v. Carrie Tingley C. C. Hospital,* 43 N. M. 1, 84 P. 2d 1088 (1938), which said:

"Now the gambling spirit feeds itself with as much relish upon a charity lottery as upon any other kind. If the average person be consumed with a desire to take a chance and get something for nothing, it matters not to him whether the promoter makes a profit or that the profit goes to charity. Indeed, if it does go to charity, his participation wears a cloak of piety otherwise denied it. He thus may be persuaded to purchase tickets oftener and in larger volume because operated in the name of charity or religion. The point we seek to make is that widespread participation in a charity lottery is just as baneful in its effect upon the public as widespread participation in any other kind of lottery. And we think it will be conceded, indeed we feel this court has said as much, that our lottery statutes sought to prevent widespread participation in *any* kind of lottery." (pp. 6, 7.)

It is immaterial whether slot machines have "comparable characteristics" to bingo since bingo in the context of the statutes falls before the mandate of the constitution. Statutory provisions which attempt to legalize bingo or the use and possession of slot machines are inconsistent with our constitution.

It is not our proper function to express any opinion with respect to the moral aspects of either operators or players of bingo. We recognize that many respectable persons look upon bingo as an innocent and harmless recreation, and the benefits of bingo are frequently applied to worthwhile religious and charitable purposes.

In view of the foregoing it is our holding that the bingo exception to the gambling laws passed by the 1971 legislature is unconstitutional and void. We refer to K. S. A. 1971 Supp. 21-4302 (1) (*d*), and the third paragraph of K. S. A. 1971 Supp. 21-4302 (3).

Appeal sustained.

KAUL, J., concurring: On the simple and sole question presented, *i. e.*, whether playing a slot machine is a game of chance with characteristics comparable to bingo, I agree the state's appeal must be sustained. However, I cannot agree that the determination of this simple question necessitated consideration of a constitutional question which is neither raised, briefed, argued nor suggested by either party on appeal. As pointed out in the court's opinion, it is a firmly established principle in this jurisdiction that the constitutionality of a statute will not be determined in any case unless such determination is absolutely necessary or imperatively required. (*Keplinger v. Kansas City,* 122 Kan. 158, 251 Pac. 413; and *Clewell v. School District,* 115 Kan. 176, 222 Pac. 74.) The restraint assiduously exercised heretofore by this court in this regard is demonstrated in treatment given the subject in the case of *National Van*

*Lines v. Jones,* 192 Kan. 338, 388 P. 2d 660. In the *Jones* case, even though unconstitutionality of sections of the motor carriers act was asserted in the petition and briefed by both parties on appeal, this court refrained from passing on the constitutional questions urged and held:

"An appellate court will not assume to pass upon constitutional questions unless they are properly before it, and the rule that only those questions presented to and decided by a trial court will be considered on appeal has particular application to matters pertaining to the constitutionality of a statute." (Syl. ¶ 1.)

While the state designated in its statement of points on appeal that the trial court erred in declining to rule on the validity of the bingo legislation, no claim is made that the question was urged or submitted to the court below and certainly no assertion of unconstitutionality is made to this court. When questioned on oral argument concerning the matter, the attorney general positively stated that he did not challenge the constitutionality of the act in question.

Judicial restraint in attacking the constitutionality of legislative acts is not a rule casually conceived for the purpose of avoiding the performance of judicial duty, rather the principle is premised on valid, substantial reasons grounded in orderly judicial process and the doctrine of separation of powers. Judicial restraint and the reasons therefore in this regard are universally recognized. In 16 Am. Jur. 2d, Constitutional Law, § 111, p. 296, this statement appears:

"It has been stated that the invariable practice of the court is never to consider the constitutionality of state legislation unless it is imperatively required." (p. 298.)

It is only when the determination of constitutionality becomes necessary in the course of a proper judicial proceeding, and the issue is sufficiently raised, that a court can or should undertake such a consideration. The power to declare a legislative act unconstitutional is a delicate one, involving a great responsibility, and should be exercised cautiously and with reluctance, and only when such conclusion is unavoidable. (16 C. J. S., Constitutional Law, § 92, pp. 293, 299 and 300.)

The majority recognize some of the decisions of this court, but after coming face to face with the salutary and long-standing rule, come to the conclusion that the instant case justifies a departure therefrom. I hold to the contrary because I find no absolute necessity or imperative requirement that the constitutionality of the

statute in question be determined on our own motion on appeal. By so doing either or both parties have been precluded from asserting a position or making a record in connection with the issue including the presentation of evidence, if any there be, bearing on the question.

This case was instigated by the filing of three, one count, informations; respectively charging defendant Nelson with possession of a gambling device under K. S. A. 1971 Supp. 21-4307, and defendants Hutton and Culver with entering and remaining in a gambling place with intent to gamble under K. S. A. 1971 Supp. 21-4303. The state's evidence consisted of identifying the five slot machines seized and showing that defendants Culver and Hutton were seen playing the machines. The trial court personally viewed the five slot machines. The evidence is fully sufficient to support a conviction on each of the charges.

Defendants' evidence consisted primarily of a showing as to what was done with money taken from the machines. It was stipulated that the American Legion Club was exempt under the pertinent provisions of the Internal Revenue Act. The only evidence concerning "bingo" or its characteristics was the brief testimony of Donald Bain which appears in the record as follows:

"I am principal at Iola High School. Bingo is a game of chance where numbers are drawn out of a box and markers are then placed on comparable numbers on cards used by the players. The winner or receiver of a prize is the one who has five markers in a row. Bingo is a common game."

On this record the trial court found that slot machines were included in the phrase "bingo and games of comparable characteristics" as it appears in K. S. A. 1971 Supp. 21-4302. In my view, the meager evidence totally fails to support the trial court's finding. Moreover, one need go no further than the dictionary to find the two terms distinguishable. Webster's Third New International Dictionary (unabridged) defines a slot machine:

"1: a machine (as a vending machine) whose operation is started by dropping a coin into a slot  2: a coin operated gambling machine that pays off according to the matching of symbols on wheels spun by a handle—called also *one-armed bandit*." (p. 2146.)

While the characteristics of "bingo" are described as:

"1a: a game resembling lotto or keno, the card used being a grid on which five numbers that are covered in a row in any direction constitute a win, the center square being counted as an already drawn number—called also *beano* b: a social gathering at which bingo is played  2: a dice game with usu. petty merchandise as stakes." (p. 217.)

A slot machine has been declared a gambling device per se by this court. (*State, ex rel., v. Myers,* 152 Kan. 52, 102 P. 2d 1028. See, also, *State v. Shaffer,* 156 Ohio St. 153, 101 N. E. 2d 380, and *State v. Joyland Club,* 124 Mont. 122, 220 P. 2d 988.) Slot machines have been specifically defined and given particular attention by previous legislatures. (K. S. A. 21-1507, 1508 and 1509, since repealed.) Bingo, on the other hand, is a game which would require some evidence in order to establish that the game being played was gambling under either former or present statutes.

While the parties use terms in their briefs, which are frequently used in cases dealing with lottery and gambling, their arguments are clearly directed to the issue whether bingo and slot machines have comparable characteristics. The constitutional question is neither argued nor suggested and I find nothing in the briefs or arguments which compels the consideration thereof. This case is not a prosecution based on an unconstitutional statute, a circumstance which would give rise to a jurisdictional question.

No case has come to my attention wherein this court has established a standard for what might amount to "absolute necessity" or "imperative requirement"; apparently, for the simple reason that heretofore those prerequisites have never been found to exist in a case such as that before us. Certainly there is no showing of any compelling emergency in the instant case which justifies disregarding propriety of judicial restraint in the delicate function of striking down acts of the legislature.

In this case, it appears the legislature has attempted to exempt bingo from the constitutional provision prohibiting lotteries and gambling statutes by deleting the element of consideration from this court's definition of a lottery, when bingo is played in and the proceeds thereof, if any, go to a tax exempt or so-called nonprofit club as described in the statute. The exemption of certain operations carried on by religious, charitable or other nonprofit organizations from constitutional and statutory prohibitions against gambling is not a new or novel subject of legislation. (See 42 A. L. R. 3d, Anno, pp. 663-674, and cases discussed therein.) In several instances, for example, *Greater Loretta Imp. Ass'n v. State Ex Rel. Boone,* [Fla. 1970], 234 So. 2d 665, statutes were upheld. In many other cases statutes have been stricken when the constitutional question has been properly presented in the jurisdiction involved. An examination of the cases reveals that the constitutional questions

are not resolved without some difficulty even when properly raised and presented.

I voice no opnion concerning the constitutionality of the statute involved herein, but in the absence of a clear showing that determination of the constitutional issue was necessary, I believe that the *sua sponte* determination thereof by this court, on the record presented, is improper under the circumstances and in violation of the rule long adhered to by this court.